SARAH R. HACOBIAN, ESQ. (SBN 340443)
SRH Law Group, APC
440 Western Ave. Suite 205
Glendale, CA 91201
Telephone: (818) 669-8522
SRHlawgroup@outlook.com
Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **KHIKAR SHIRINIAN,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**B. A. SEMAIA, Acting Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; CALEB VITELLO, Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary, Department of Homeland Security; and PAM BONDI, Attorney General of the United States,**<br><br>**Respondents.** | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; REQUEST FOR IMMEDIATE RELEASE AND DECLARATORY AND INJUNCTIVE RELIEF** |

## I. INTRODUCTION

1. Petitioner Khikar Shirinian ("Petitioner") petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his unlawful re-detention by

United States Immigration and Customs Enforcement ("ICE") following nearly four years of liberty in the United States.

2. Petitioner entered the United States on December 16, 2022, through the San Luis Port of Entry at the Arizona border. Immigration authorities initially detained him for approximately **four days** before releasing him into the community.

3. For nearly four years thereafter, Petitioner remained in the United States, established a residence in California, lived with his family, pursued asylum protection, and complied with his immigration reporting obligations.

4. Petitioner has **no criminal record**, has **never missed an ICE check-in**, and has no final order of removal.

5. Notwithstanding this demonstrated history of compliance, ICE re-detained Petitioner on or about October 5, 2026, depriving him of the liberty he had enjoyed since December 2022.

6. **ICE re-detained Petitioner without advance notice, without a meaningful opportunity to contest the proposed revocation of his release, and without a pre-deprivation hearing before a neutral decisionmaker.**

7. Petitioner challenges not merely the duration of his detention, but the constitutionality of ICE's decision to revoke his previously granted liberty without the procedural safeguards required by the Fifth Amendment.

8. His re-detention is particularly troubling because Petitioner has no criminal history, has complied with immigration supervision, has an identifiable residence, and is the father of two children residing in the United States.

9. The government previously permitted Petitioner to remain at liberty. It cannot disregard the constitutional consequences of that decision and summarily return him to physical confinement without constitutionally adequate procedures.

10. Courts within this District have repeatedly recognized that individuals released from immigration custody acquire a substantial liberty interest in remaining free from detention, and that revocation of that liberty without appropriate pre-deprivation procedures violates due process.

11. In *Gor Ayvazyan v. Semaia*, No. 5:26-cv-02419-MAR, slip op. at 9 (C.D. Cal. June 25, 2026), the Court concluded that a subsequent bond hearing was insufficient to remedy the constitutional violation resulting from re-detention without pre-deprivation process. The Court ordered the petitioner's immediate release under his prior conditions. (See Exh. E.)

12. Likewise, in *Genrik Abgarian v. Lyons*, No. 5:26-cv-01871-AS, slip op. at 11 (C.D. Cal. Sept. 21, 2026), the Court ordered immediate release, rejecting the proposition that a post-deprivation bond hearing adequately addresses the absence of constitutionally required procedures before re-detention. (See Exh. F.)

13. These decisions are especially persuasive because they address the precise constitutional injury alleged here: the government's revocation of a previously released noncitizen's liberty without adequate procedural safeguards.

14. **Petitioner seeks immediate restoration of his pre-detention liberty, not a bond hearing conducted after the constitutional deprivation has already occurred.**

15. Petitioner therefore requests that this Court grant the writ, order his immediate release under the supervision conditions previously imposed, and prohibit further re-detention based on the same circumstances without constitutionally adequate advance notice and a meaningful pre-deprivation opportunity to be heard.

## II. PARTIES

16. Petitioner Khikar Shirinian, A-Number A246-267-816, is a noncitizen presently detained by ICE at Adelanto detention Center.

17. Petitioner is physically confined under the authority of the Department of Homeland Security and ICE.

18. Respondent Warden of Adelanto is responsible for Petitioner's immediate physical custody and is named in that official capacity.

19. Respondent Field Office Director of ICE Enforcement and Removal Operations, Los Angeles Field Office, is responsible for the administration and enforcement of ICE custody decisions within the relevant area, to the extent applicable to Petitioner's custody.

20. Respondent Todd M. Lyons is named in his official capacity as Director of ICE.

21. Respondent Markwayne Mullin is named in his official capacity as Secretary of Homeland Security.

22. All Respondents are sued solely in their official capacities.

## III. JURISDICTION AND VENUE

23. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3), which authorizes habeas relief where a person is held in custody in violation of the Constitution or laws of the United States.

24. Petitioner challenges the legality of his present physical confinement, rather than seeking review of the merits of his asylum application or any discretionary immigration determination.

25. Federal habeas corpus provides a means to challenge unconstitutional executive detention. *INS v. St. Cyr*, 533 U.S. 289, 301–03 (2001); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

26. The Ninth Circuit recognizes federal jurisdiction over constitutional claims challenging immigration detention. *Martinez v. Clark*, 36 F.4th 1219, 1224 (9th Cir. 2022), vacated on other grounds, 144 S. Ct. 1339 (2024).

27. The restrictions on review of discretionary immigration custody decisions do not eliminate jurisdiction over Petitioner's constitutional challenge to the procedures used to deprive him of liberty.

28. Venue is proper in this District under the applicable habeas jurisdictional principles.

29. This Court has authority to order release from unlawful custody and to issue appropriate relief necessary to make its judgment effective.

## IV. FACTUAL AND PROCEDURAL BACKGROUND

### A. Initial Entry, Detention, and Release

30. Petitioner entered the United States on December 16, 2022, through the Arizona border.

31. Immigration authorities detained Petitioner for approximately four days after his arrival.

32. Following that initial detention, immigration authorities released Petitioner into the United States.

33. Petitioner was permitted to live in the community rather than remain in immigration confinement.

34. The precise statutory or regulatory form of his initial release is not presently documented because, according to the information provided to counsel, ICE took possession of Petitioner's release paperwork when it re-detained him.

35. Petitioner requests that Respondents produce the relevant records establishing his initial custody classification, release authority, conditions of supervision, and asserted basis for revocation.

**B. Nearly Four Years of Compliance and Community Residence**

36. Following his release in December 2022, Petitioner established his life in California.

37. Petitioner has complied with ICE reporting requirements and has never missed a scheduled check-in.

38. Petitioner has no criminal record.

39. Petitioner has no final order of removal.

40. Petitioner submitted an application for asylum and related protection on or about April 4, 2023.

41. Petitioner has remained available to immigration authorities throughout his period of release.

42. His nearly four-year history of compliance strongly supports the conclusion that continued detention is unnecessary to secure his appearance in immigration proceedings.

**C. Petitioner's Family Ties**

43. Petitioner is the father of two children, Mariam Shirinian, born December 31, 2009, and Artur Shirinian, born November 9, 2016.

44. Petitioner's family relationships are documented by the children's birth certificates, which identify him as their father.

45. Petitioner also possesses a California driver's license, issued in December 2023, documenting his established connection to California.

46. Petitioner also holds a work authorization that was taken with his documents upon his detention.

47. His re-detention separates him from his wife and children and interferes with the family life he established during his years of release.

48. These family ties, his residence, and his record of compliance are relevant to the individualized assessment that should have preceded any decision to revoke his liberty.

**D. ICE's Re-Detention**

49. On or about **October 5, 2026** ICE re-detained Petitioner at his ICE check-in appointment.

50. Petitioner was not given advance written notice identifying the reasons ICE intended to revoke his release.

51. Petitioner was not afforded a pre-deprivation hearing or meaningful opportunity to challenge the asserted grounds for detention.

52. According to Petitioner, ICE did not identify any alleged violation of supervision, changed circumstances, flight risk, or danger to the community.

53. At the time of his re-detention, ICE allegedly took possession of Petitioner's prior release documents.

54. As a result, Petitioner does not presently possess the paperwork documenting the precise terms of his initial release, although his family members have theirs.

55. Those records remain within the government's possession or control, and their absence should not prevent judicial review of the legality of his detention.

56. Petitioner remains in ICE custody at Adelanto Detention Center, separated from his family and deprived of the liberty he had maintained since December 2022.

## V. LEGAL STANDARD

57. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law.

58. The Due Process Clause protects noncitizens physically present in the United States, including those whose immigration status is unlawful or unresolved. *Zadvydas*, 533 U.S. at 693.

59. Freedom from physical confinement is a fundamental liberty interest protected by the Constitution. *Id.* at 690.

60. Immigration detention is civil rather than punitive, and the government's detention authority remains constrained by constitutional requirements. *Hernandez v. Sessions*, 872 F.3d 976, 981, 990 (9th Cir. 2017).

61. A procedural due process claim requires a protected liberty interest and a deprivation without constitutionally sufficient procedures. *Brewster v. Board of Education*, 149 F.3d 971, 982 (9th Cir. 1998).

62. In determining the procedures constitutionally required, courts consider the private interest at stake, the risk of erroneous deprivation and value of

additional safeguards, and the government's interest and administrative burdens. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

63. The Ninth Circuit applies the *Mathews* framework to constitutional challenges involving immigration detention. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

## VI. GROUNDS FOR RELIEF

### GROUND ONE: VIOLATION OF FIFTH AMENDMENT PROCEDURAL DUE PROCESS — REVOCATION OF AN ESTABLISHED LIBERTY INTEREST WITHOUT ADEQUATE PRE-DEPRIVATION PROCEDURES

64. Petitioner incorporates the preceding allegations.

65. The government released Petitioner from immigration custody in December 2022.

66. For nearly four years, Petitioner remained at liberty, complied with his supervision obligations, and established significant family and community ties.

67. The government's prior decision to release Petitioner is constitutionally significant. Petitioner had a substantial liberty interest in continuing to live outside physical confinement.

68. In *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972), the Supreme Court recognized that conditional liberty is protected by due process notwithstanding the restrictions accompanying release.

69. Federal district courts have applied this principle to the revocation of immigration release. See *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

70. Petitioner's interest is particularly substantial because he was released in 2022 and complied with his immigration obligations over a prolonged period.

71. The government cannot disregard that history when determining whether renewed physical detention is justified.

72. In *Vladimir Hambardzumyan v. Lyons*, No. 5:26-cv-02509-DTB, slip op. at 6 (C.D. Cal. May 27, 2026), the Court recognized that an individual who had lived in the community for years following immigration release possessed a constitutionally protected liberty interest in remaining outside detention. (See Exh. H.)

73. The *Hambardzumyan* court also concluded that pre-deprivation procedures were required under the circumstances before revoking that liberty.

74. Petitioner's circumstances are comparable: initial detention at the border, release into the community, substantial family ties, years of compliance, and subsequent ICE re-detention.

75. Respondents deprived Petitioner of this protected liberty without advance notice, a meaningful opportunity to respond, or an individualized pre-deprivation determination.

76. That deprivation violated the Fifth Amendment.

**GROUND TWO: THE MATHEWS FACTORS REQUIRE MEANINGFUL PRE-DEPRIVATION PROCESS**

77. Petitioner incorporates the preceding allegations.

78. Each of the three *Mathews* factors supports the conclusion that ICE was required to provide meaningful procedural safeguards before revoking Petitioner's release.

**A. Petitioner's Private Liberty Interest Is Substantial**

79. Petitioner had lived outside immigration detention since December 2022.

80. During that period, he maintained family relationships, established a California residence, pursued immigration relief, and complied with ICE reporting requirements.

81. Physical detention deprives him of the freedom to live with his family and participate in ordinary community life.

82. His liberty interest is not diminished merely because immigration proceedings remain unresolved.

**B. The Risk of Erroneous Deprivation Is Unacceptably High**

83. A detention decision made without a meaningful opportunity to respond creates a substantial risk of error.

84. That risk is particularly pronounced where, as here, Petitioner has no criminal record, no missed check-ins, and no final order of removal.

85. A meaningful pre-deprivation process would permit Petitioner to present evidence of his compliance, residence, family responsibilities, and lack of dangerousness.

86. Such procedures would also require the government to identify the actual basis for revoking his release rather than relying on unexplained or unsupported assertions.

87. Without that opportunity, an individual who has complied with immigration supervision may be confined despite the absence of any demonstrated need for physical detention.

**C. The Government's Interests Do Not Justify the Absence of Process**

88. The government has legitimate interests in ensuring attendance at immigration proceedings and protecting the public.

89. Those interests, however, do not eliminate the obligation to use constitutionally adequate procedures.

90. Petitioner's lengthy record of compliance provides substantial evidence that his appearance can be secured through the supervision measures previously used.

91. The administrative burden of providing notice and an individualized opportunity to respond is modest when compared with the serious deprivation resulting from physical confinement.

92. On balance, the *Mathews* factors favor Petitioner.

93. Accordingly, Respondents violated Petitioner's procedural due process rights by re-detaining him without the safeguards required by the Fifth Amendment.

**GROUND THREE: IMMEDIATE RELEASE IS THE APPROPRIATE REMEDY; A POST-DEPRIVATION BOND HEARING DOES NOT CURE THE CONSTITUTIONAL VIOLATION**

94. Petitioner incorporates the preceding allegations.

95. Petitioner seeks immediate release because the alleged constitutional violation occurred when ICE revoked his previously established liberty without adequate pre-deprivation process.

96. A bond hearing conducted after re-detention would address whether continued confinement is justified at that later point. It would not necessarily remedy the separate constitutional injury arising from the government's failure to provide process before revoking his release.

97. In *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025), the court explained that post-deprivation review cannot substitute for the procedural safeguards necessary to prevent an erroneous initial deprivation of liberty.

98. The court ordered immediate release and required constitutionally adequate procedures before any subsequent re-detention.

99. The same distinction was recognized in *Gor Ayvazyan v. Semaia*, No. 5:26-cv-02419-MAR, slip op. at 8–10 (C.D. Cal. June 25, 2026). (See Exh. E at 9.)

100. There, the court concluded that the availability of a post-deprivation hearing did not remedy the original procedural due process violation. It ordered immediate release under the petitioner's prior conditions of release.

101. The court further recognized that release was necessary to restore the last uncontested status preceding the constitutional dispute.

102. Similarly, in *Genrik Abgarian v. Lyons*, No. 5:26-cv-01871-AS, slip op. at 11 (C.D. Cal. Sept. 21, 2026), the court concluded that a post-deprivation bond hearing would not address the claim that the petitioner had been denied

adequate procedural safeguards before the deprivation of liberty. (See Exh. F at 11.)

103. The court ordered the petitioner's immediate release without imposing additional restraints beyond the supervision conditions in effect before re-detention.

104. In *Slav Pavlinov Peev v. Marin*, No. 5:26-cv-00882-MCS-DMK, slip op. at 2 (C.D. Cal. July 30, 2026), the district court agreed that immediate release was appropriate where Respondents had not provided a meaningful opportunity to contest revocation of supervision. (See Exh. I at 2.)

105. The court rejected the government's reliance on a possible future bond hearing, explaining that such a hearing was not equivalent to the required process before re-detention.

106. In *Levon Tonapetyan v. Lyons*, No. 5:26-cv-02512-AYP, slip op. at 1–2 (C.D. Cal. July 21, 2026), the court likewise ordered immediate release following re-detention without constitutionally adequate procedural safeguards. (See Exh. G.)

107. In *Milena Aperyan v. Semaia*, No. 5:26-cv-00699-WLH-AYP, slip op. at 2 (C.D. Cal. Mar. 27, 2026), the Court granted habeas relief and ordered immediate release, finding that the petitioner's sudden detention without

meaningful pre- or post-deprivation process violated due process. The Court further prohibited re-detention absent appropriate notice and a hearing requiring the government to justify renewed custody. (See Exh. J at 2.)

108. In *Viacheslav Surguchev v. Warden Adelanto ICE Processing Center*, No. 5:26-cv-04905-DSR, slip op. at 2–3 (C.D. Cal. Sept. 2026), the Court granted habeas relief and ordered immediate release where the petitioner had previously been released on recognizance, complied with supervision requirements, and was subsequently re-detained without advance notice or an opportunity to contest the detention. Although the government's failure to respond was an independent basis for relief, the Court also addressed the constitutional sufficiency of the petitioner's allegations. (See Exh. K.)

109. These decisions provide persuasive support for restoring Petitioner to the liberty he enjoyed before ICE re-detained him.

110. Petitioner does not contend that the government can never seek to detain him in the future. Rather, he contends that the government must comply with the Constitution before revoking his liberty, absent circumstances legally excusing pre-deprivation process.

111. Requiring Petitioner to remain incarcerated while awaiting a new bond hearing would not restore the pre-deprivation process he was denied.

112. Therefore, **immediate release under the conditions previously governing Petitioner's liberty is the appropriate remedy.**

**GROUND FOUR: UNCONSTITUTIONAL AND ARBITRARY CIVIL DETENTION**

113. Petitioner incorporates the preceding allegations.

114. Civil immigration detention must serve legitimate regulatory purposes and remain subject to constitutional limitations. *Zadvydas*, 533 U.S. at 690–91.

115. Petitioner has no criminal record, no missed ICE check-ins, and no final removal order.

116. His history demonstrates that he was able to comply with immigration obligations while residing outside detention for nearly four years.

117. Respondents have not identified any new circumstance establishing that Petitioner poses a danger to the community or is likely to abscond.

118. On the presently known facts, his renewed confinement appears unnecessary and disproportionate to the government's legitimate regulatory interests.

119. Petitioner therefore alleges that his continued confinement is arbitrary and violates the substantive protections of the Fifth Amendment, independently of the procedural deficiencies alleged above.

120. Petitioner requests that the Court assess this claim in light of the actual statutory custody authority and factual justification identified in Respondents' return.

**GROUND FIVE: PRESERVATION OF HABEAS JURISDICTION AND EFFECTIVE RELIEF**

121. Petitioner incorporates the preceding allegations.

122. Under 28 U.S.C. § 1651(a), this Court may issue appropriate orders in aid of its jurisdiction.

123. Petitioner requests that Respondents be prohibited from transferring him outside this District during the pendency of this action without prior notice to counsel and, where necessary, leave of Court.

124. Such relief would preserve meaningful judicial review and prevent interference with the Court's ability to adjudicate the legality of Petitioner's confinement.

125. Petitioner further requests that Respondents be directed to identify and preserve his initial release documents, custody records, supervision history, and records concerning the decision to re-detain him.

**VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

126. Petitioner challenges the constitutionality of his re-detention, specifically the failure to provide adequate procedures before revoking his liberty.

127. To the extent prudential exhaustion applies, Petitioner submits that requiring further administrative proceedings would be inadequate to remedy the constitutional deprivation alleged.

128. His claim concerns the absence of process before re-detention, not merely the merits of a subsequent custody decision.

129. A post-deprivation custody hearing cannot retroactively provide the procedural protection that should have preceded the deprivation.

130. Under these circumstances, Petitioner requests that the Court excuse any applicable prudential exhaustion requirement and reach the merits of his constitutional claims.

## VIII. REQUEST FOR PROMPT CONSIDERATION

131. Petitioner is presently deprived of his physical liberty and separated from his family.

132. Every additional day of unlawful confinement prolongs the alleged constitutional injury.

133. Under 28 U.S.C. § 2243, Petitioner requests prompt issuance of an order directing Respondents to show cause why the writ should not be granted.

134. Petitioner further requests an expedited briefing schedule and prompt resolution without oral argument if the Court determines that the written submissions are sufficient.

**IX. PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

A. Assume jurisdiction over this Petition under 28 U.S.C. § 2241;

B. Issue an Order to Show Cause directing Respondents to certify the true cause of Petitioner's detention and respond to the constitutional claims raised herein;

C. **GRANT the Petition for Writ of Habeas Corpus** and declare that Petitioner's re-detention without constitutionally adequate procedures violated the Fifth Amendment, upon finding the alleged procedural deficiencies established;

D. **ORDER RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER KHIKAR SHIRINIAN FROM IMMIGRATION CUSTODY**, subject only to the supervision conditions lawfully in effect immediately before his re-detention;

E. Enjoin Respondents from re-detaining Petitioner based on the same circumstances without constitutionally adequate advance notice and a

meaningful pre-deprivation opportunity to contest detention before a neutral decisionmaker, absent a legally sufficient emergency or other recognized exception;

F. Direct Respondents to preserve and, as appropriate, produce Petitioner's original release documentation, supervision records, and records relating to the decision to re-detain him;

G. Prohibit transfer outside this District during the pendency of this proceeding without appropriate notice and further order of the Court;

H. Award reasonable costs and attorney's fees to the extent authorized by applicable law, upon a proper application; and

I. Grant such other and further relief as this Court deems just and proper.

Dated: October 7, 2026

*/s/ Sarah R. Hacobian*
**SARAH R. HACOBIAN**
Attorney for Petitioner

## EXHIBIT LIST

A Declaration of Sarah R. Hacobian

B California driver's license

C Birth certificate of Mariam Shirinian

D Birth certificate of Artur Shirinian

E Gor Ayvazyan, No. 5:26-cv-02419-MAR, Dkt. 11

F Genrik Abgarian, No. 5:26-cv-01871-AS, Dkt. 15

G Levon Tonapetyan, No. 5:26-cv-02512-AYP, Dkt. 12

H Vladimir Hambardzumyan, No. 5:26-cv-02509-DTB, Dkt. 11

I Slav Pavlinov Peev, No. 5:26-cv-00882-MCS-DMK, Dkt. 32

J Milena Aperyan, No. 5:26-cv-00699-WLH-AYP, Dkt. 19

K Viacheslav Surguchev, No. 5:26-cv-04905-DSR, Dkt. 11

# EXHIBIT A

## DECLARATION OF SARAH R. HACOBIAN

I, Sarah R. Hacobian, declare as follows:

1. I am an attorney licensed to practice law in the State of California and counsel for Petitioner Khikar Shirinian in this habeas proceeding.
2. I submit this declaration in support of Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241.
3. The factual statements in this declaration are based on my communications with Petitioner and/or his family, my review of available records, and information obtained in the course of my representation, except where otherwise specified.
4. Based on information provided to me by Petitioner's family, Petitioner entered the United States on December 16, 2022, and was detained by immigration authorities for approximately four days before being released.
5. Based on information provided to me by Petitioner's family, Petitioner has complied with his immigration reporting requirements and has never missed an ICE check-in.
6. Based on information provided to me by Petitioner's family, Petitioner has no criminal record and no final order of removal.
7. I have reviewed Petitioner's California driver's license, which identifies him as Khikar Shirinian and documents his California residence.

8. I have reviewed the birth certificates of Mariam Shirinian and Artur Shirinian, both of which identify Petitioner as their father.
9. Based on information provided to me by Petitioner's family, ICE re-detained Petitioner on October 5, 2026.
10. I am informed that Petitioner received no advance notice or meaningful opportunity to contest the revocation of his release before ICE re-detained him.
11. Based on information provided to me by Petitioner's family, ICE took possession of Petitioner's original release documentation during his re-detention.
12. Consequently, the original documents evidencing the terms of his initial release are not presently available to counsel.
13. I respectfully request that the Court consider Petitioner's history of compliance, family circumstances, and the constitutional deficiencies alleged in the Petition when determining the appropriate relief.
14. Attached to the Petition are true and correct copies of the documents and judicial orders identified in the exhibit index.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of October 2026, at Glendale, California.

*/s/ Sarah R. Hacobian*
**SARAH R. HACOBIAN**

# EXHIBIT B


California USA
DRIVER LICENSE
DL W1973275
EXP 04/18/2028
LN SHIRINIAN
FN KHIKAR
411 S GLENWOOD PL UNIT 101
BURBANK, CA 91506
DOB 04/18/1986
RSTR NONE
CLASS C
LIMITED-TERM
END NONE
04181986
SEX M
HGT 6'-00"
HAIR BLK
WGT 256 lb
EYES BLK
ISS
12/19/2023
DD 11/01/20233510D6/C1FD/28

# EXHIBIT C

Sarian Notary Services

**SARIAN NOTARY SERVICES**

TRANSLATION AND NOTARY SERVICES

1301 West Glenoaks Blvd., Suite 101, Glendale, CA 91201
Tel: 818-261-1017

*Translated from Russian*
*Page 1 of 1*

COATS OF ARMS OF RUSSIAN FEDERATION

# BIRTH CERTIFICATE

*Last name:* **Shirinian**
*First name:* **Mariam**
*Father's name:* **Khikar**

*Date of Birth:* **December 31, 2009 two thousand nine**
*Place of Birth:* **City of Moscow, Russia**

*This Birth was registered in the Birth Acts Register on February 4, 2010 under registration No.523*

*Father:*
*Last name:* **Shirinian**
*First name:* **Khikar**
*Father's Name* **Artur**
*Citizenship:* **Republic of Armenia**
*Nationality:* **Armenian**

*Mother:*
*Last name:* **Grigorian**
*First name:* **Anait**
*Father's Name* **Kamo**
*Citizenship:* **Russia**
*Nationality:* **Armenian**

*Place of State Registration*: Tushinsk Department of Civil Status Acts Registry, Management Department of Civil Status Acts Registry in the City of Moscow

Date of Issue: February 4, 2010
Head of Civil Status Acts Registration Agency /signature/ E.V. Borovskaya

IV-MU № 792969

*CORRESPONDING OFFICIAL ROUND SEAL OF CIVIL STATUS ACTS REGISTRATION AGENCY*

*I, Evelina Sedrakyan, do hereby certify that I am fluent in the English, Armenian, Russian languages and I am fully competent to perform translations into and from these languages. I certify that this translation has been done by me and is true, accurate and correct with the original Russian document presented to me on this 15th day of February, 2023*

*THE LATTER REVEALED NO ERASURES, CORRECTIONS OR IRREGULARITIES. (A copy of the Russian document is attached)*

*Evelina Sedrakyan*

*State of California*
*County of Los Angeles*
*Subscribed and sworn to before me on this 15th day of February, 2023*
*By* Evelina Sedrakyan
*Proven to me on the basis of satisfactory evidence to be the person who appeared before me*

*Adelina Sarian*

ADELINA SARIAN
Notary Public - California
Los Angeles County
Commission # 2284449
My Comm. Expires May 3, 2023

IV 0153736

# СВИДЕТЕЛЬСТВО О РОЖДЕНИИ

Ширинян
фамилия
Мариам Хикаровна
имя, отчество
родился(лась) 31/12/2009
число, месяц, год (цифрами и прописью)
тридцать первого декабря
две тысячи девятого года
место рождения г.Москва

Россия

о чем 2010 года февраля месяца 04 числа
составлена запись акта о рождении № 523

Отец Ширинян
фамилия
Хикар Артурович
имя, отчество
гражданин Республики Армения
гражданство
армянин
национальность (вносится по желанию отца)

Мать Григорян
фамилия
Анаит Камоевна
имя, отчество
гражданка России
гражданство
армянка
национальность (вносится по желанию матери)

Место государственной регистрации Тушинский отдел ЗАГС
Управления ЗАГС Москвы
наименование органа записи актов гражданского состояния

Дата выдачи «04» февраля 2010 г.

Руководитель органа
записи актов гражданского состояния [signature] Е.В. Боровская

М.П.

IV-МЮ № 792969

Гознак, МПФ, Москва, 1998.

# EXHIBIT D

Sarian Notary Services

**SARIAN NOTARY SERVICES**
**TRANSLATION AND NOTARY SERVICES**
1301 West Glenoaks Blvd., Suite 101, Glendale, CA 91201
Tel: 818-261-1017

***Translated from Russian***
***Page 1 of 1***

COATS OF ARMS OF RUSSIAN FEDERATION

# BIRTH CERTIFICATE

*Last name:* **Shirinian**
*First name:* **Artur**
*Father's name:* **Khikar**

*Date of Birth:* **November 9, 2016 two thousand sixteen**
*Place of Birth:* **City of Moscow, Russia**

*This Birth was registered in the Birth Acts Register on November 17, 2016 under registration No.1162*

*Father:* *Last name:* **Shirinian**
*First name:* **Khikar**
*Father's Name* **Artur**
*Citizenship:* **Republic of Armenia**
*Nationality:* **Armenian**

*Mother:* *Last name:* **Grigorian**
*First name:* **Anait**
*Father's Name* **Kamo**
*Citizenship:* **Russia**
*Nationality:* **Armenian**

*Place of State Registration*: Department of Civil Status Acts Registry in the City of Moscwo No. 70

*Multifunctional center for the provision of public services in the Mitino district*

Date of Issue: November 17, 2016
Head of Civil Status Acts Registration Agency /signature/ A.V. Makarenkova
VIII-MU № **675140**

***CORRESPONDING OFFICIAL ROUND SEAL OF CIVIL STATUS ACTS REGISTRATION AGENCY***

****************************************************

*I, Evelina Sedrakyan, do hereby certify that I am fluent in the English, Armenian, Russian languages and I am fully competent to perform translations into and from these languages. I certify that this translation has been done by me and is true, accurate and correct with the original Russian document presented to me on this 15th day of February, 2023*

*THE LATTER REVEALED NO ERASURES, CORRECTIONS OR IRREGULARITIES. (A copy of the Russian document is attached)*

/signature/ *Evelina Sedrakyan*

*State of California*
*County of Los Angeles*
*Subscribed and sworn to before me on this 15th day of February, 2023*
*By* Evelina Sedrakyan
*Proven to me on the basis of satisfactory evidence to be the person who appeared before me.*

/signature/
*Adelina Sarian*

ADELINA SARIAN
Notary Public - California
Los Angeles County
Commission # 2284449
My Comm. Expires May 3, 2023

# СВИДЕТЕЛЬСТВО О РОЖДЕНИИ

Ширинян
фамилия
Артур Хикарович
имя, отчество
родился(лась) 09.11.2016
число, месяц, год (цифрами и прописью)
девятого ноября
две тысячи шестнадцатого года
место рождения город Москва

Россия

о чем 2016 года ноября месяца 17 числа
составлена запись акта о рождении № 1162
Отец Ширинян
фамилия
Хикар Артурович
имя, отчество
гражданин России
гражданство
армянин
национальность (вносится по желанию отца)
Мать Григорян
фамилия
Анаит Камоевна
имя, отчество
гражданка России
гражданство
армянка
национальность (вносится по желанию матери)
Место государственной регистрации Орган ЗАГС Москвы № 70
Многофункциональный центр предоставления государственных
наименование органа записи актов гражданского состояния
услуг района Митино

Дата выдачи «17» ноября 2016 г.

М.П.

Руководитель органа
записи актов гражданского состояния А.В. Макаренкова

VIII-МЮ № 675140

Гознак, МПФ, Москва, 2016, «В»

# EXHIBIT E

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GOR AYVAZYAN,

Petitioner,

v.

FERETI SEMAIA et al.,

Respondents.

Case No. 5:26-cv-02419-MAR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On May 6, 2026, Petitioner Gor Ayvazyan ("Petitioner"), an immigration detainee, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), challenging his re-detention in immigration custody. Dkt. 1 ("Pet."). On May 14, 2026, Respondents filed an Answer to the Petition. Dkt. 8, ("Answer"). On May 18, 2026, Petitioner filed a Reply. Dkt. 9, ("Reply"). On June 4, 2026, Petitioner filed a Notice of Supplemental Evidence in support of Petition. Dkt. 10. The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. Dkt. 6. **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody**

**on Petitioner's prior conditions of release.**

**II.**

**FACTUAL BACKGROUND[1]**

Petitioner is a native and citizen of Armenia who entered the United States on December 4, 2024. Pet. at 2. Petitioner entered at or near a Port of Entry and was detained for approximately one month and ten days before being released from custody on January 7, 2025. Id. Following his release, Petitioner was placed on an ankle monitor for approximately one week and then was transitioned to telephonic reporting through a mobile application. Id. For nearly a year, Petitioner remained in the community. Id. Petitioner has not missed an Immigration and Custody Enforcement ("ICE") appointment and has no criminal convictions. On April 24, 2026, Petitioner was arrested for violation of California Penal Code 243(D); however, no charges have been brought against Petitioner. See Answer at 3; Dkt. 10. On May 1, 2026, Petitioner was detained by ICE "without warning, without a hearing, and without any individualized determination that detention was necessary." Pet. at 2.

**III.**

**SUMMARY OF PETITIONER'S CLAIMS**

Petitioner's first claim for relief is that his detention violates 28 U.S.C. § 2241 because his detention is not justified by any legitimate purpose and because detention based solely on an unproven arrest is constitutionally impermissible. Pet. at 7. Petitioner's second claim is that his detention without a pre-deprivation hearing violates his Fifth Amendment right to due process. Id. Petitioner's third claim is that his detention is arbitrary and excessive, and that no legitimate purpose supports his

1 The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition and the exhibits attached. Respondents had the opportunity to dispute these facts or provide additional facts but declined to do so unless noted herein. Dkt. 8. Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true)

continued detention, which violates his right to due process. Id. at 7–8. Petitioner's fourth claim for relief is that, pursuant to 28 U.S.C. § 1651, this Court has authority to prevent Petitioner's transfer and his continued detention. Id. at 8.

Petitioner seeks immediate release from custody on the same conditions of supervision as prior to his arrest. Pet. at 8. Petitioner further seeks an order enjoining Respondents from re-detaining him without due process and prohibiting his transfer without notice. Id.

In their Answer, Respondents argue that Petitioner is subject to mandatory detention based on his arrest and that his detention is authorized because he is in removal proceedings and his detention is not yet prolonged. Answer at 4.

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133

F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind,

courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

### 1. Due process requires a pre-deprivation hearing

It is undisputed that Petitioner entered the United States in 2024. Pet. at 2. It is further undisputed that Petitioner was detained and then released from custody on bond.[2] Id.; Answer at 3. Thus, the Court concludes that once Petitioner was released from custody, he acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the time he spent out of custody building a life for himself in the United States. See, e.g.,

---

2 The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that he was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was arrested by immigration authorities on May 1, 2026, without prior notice or a pre-deprivation hearing. Pet. at 2. It appears clear that petitioner has not been afforded any opportunity to contest the lawfulness of his detention. S.E. v. Noem, No. 1:26-CV-00356-DAD-SCR, 2026 WL 206085, at *3 (E.D. Cal. Jan. 27, 2026). Because the government contends that Petitioner is subject to mandatory detention, Petitioner's only available process is through a habeas petition. E.C., 2025 WL 2916264, at *10 (citing Sola v. Holder, 720 F.3d 1134, 1135 (9th Cir. 2013)). Further, Petitioner will likely not be provided process through the criminal system to contest the basis for his arrest because charges have not been filed against him. See Dkt. 10. Therefore, the risk of erroneous deprivation of petitioner's liberty is high under such circumstances. Doe, 800 F. Supp. 3d at 216–17; see also Brandon Y.M., v. Andrews, No. 1:25-cv-01962-SKO (HC), 2026 WL 125234, at *3 (E.D. Cal. Jan. 16, 2026) ("The Court further finds serious constitutional concerns would be presented if the LRA encompassed Petitioner's arrest and subsequent release without the filing of a formal accusatory pleading.").

Respondents contend that Petitioner's arrest for battery resulting in serious bodily injury to another under Cal. Penal Code § 243(d) qualifies under the LRA and subjects Petitioner to mandatory detention under § 1226(c). Answer at 3. The LRA expanded § 1226(c) to include aliens who are inadmissible under § 1182(a)(i)(6)(A), such as Petitioner, and who have been "charged with, [] arrested for…any crime that results in death or serious bodily injury to another person." See § 1226(c)(1)(E)). However, several courts have noted "serious constitutional concerns" regarding

mandatory detention for petitioners who have merely been arrested for a crime. See id. (citing Doe v. Moniz, 800 F.Supp.3d 203, 216 (D. Mass. Sept. 5, 2025)). Although Petitioner was arrested, no complaint or accusatory pleading has been filed. Dkt. 10. Furthermore, under California law, when an individual is arrested but released with no filed accusatory pleading, "the arrest shall not be deemed an arrest, but a detention only." Cal. Penal Code § 849.5. Thus, Petitioner's detention does not appear to qualify under § 1226(c)(1)(E)). Brandon Y.M., v. Andrews, No. 1:25-cv-01962-SKO (HC), 2026 WL 125234, at *3 (E.D. Cal. Jan. 16, 2026) (finding arrest for violation of Cal. Penal Code § 243(d) where no charging documents were filed did not subject Petitioner to mandatory detention). "[T]he risk of an erroneous deprivation [of liberty] is high" without a hearing because neither the government nor Petitioner had an opportunity to determine whether there was any valid basis for his detention. Pinchi, 792 F. Supp. 3d at 1035 (citing Singh v. Andrews, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025) (cleaned up)).

The government's interest in detaining Petitioners without notice and a pre-deprivation hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). There is no indication that providing proper notice and a pre-deprivation hearing would be fiscally or administratively burdensome on the

Case 5:26-cv-02194-EAR Document 11 Filed 10/07/26 Page 8 of 121 Page ID #:40

government. See Garcia, 2026 WL 194745, at *3.

The Court concludes that Petitioner's detention by immigration authorities on May 1, 2026, without notice or a pre-deprivation hearing, violated his procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Zinermon, 494 U.S. 113, 127 ("Generally, the Due Process Clause 'requires some kind of a hearing before the State deprives a person of liberty or property.'").

The fact that Petitioner could receive a post-deprivation hearing does not remedy the violation of Petitioner's procedural due process rights. See, e.g., Sachin Sachin v. Warden of the Desert View Facility, et al., No. 5:26-cv-00707-MWC-ADS, 2026 WL 855741 (C.D. Cal. Feb. 21, 2026) (C.D. Cal. Feb. 21, 2026) ("a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."); E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson,

2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales, 2026 WL 1026234; Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Thus, the Court concludes a bond hearing is insufficient to remedy the violation of Petitioner's due process rights in this case.

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody on his prior OROR. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing

evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community."). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

The Court notes that it will entertain an application by Petitioner requesting an award of reasonable attorney's fees and costs under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition as follows. Respondents shall immediately release Petitioner **Gor Ayvazyan (A# unknown)** from custody on his prior OROR. Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. When Petitioner is not yet subject to a final order of removal, Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which

the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: June 25, 2026



HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT F

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GENRIK ABGARIAN,<br>Petitioner,<br>v.<br>TODD LYONS, et al.,<br>Respondents. | NO. EDCV 26-1871-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

On April 15, 2026, Genrik Abgarian ("Petitioner"), an immigration detainee proceeding through counsel, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, with the Declaration of Sarah Hacobian and supporting exhibits against: Todd Lyons, Acting Director, Immigration and Customs Enforcement ("ICE"), Warden of the Desert View Annex/Adelanto ICE processing Center, Markwayne Mullin, Secretary of the Department of Homeland Security, and the Field Office Director of ICE Enforcement and Removal Operations ("ERO") (collectively

"Respondents"). ("Petition")(Dkt. No. 1). Petitioner claims, among other things, that he was denied due process of law when he was re-detained without notice or an opportunity to be heard, at a routine ICE check-in, in violation of his Fifth Amendment procedural due process rights. (See Petition, ¶¶ 38-47).

Petitioner seeks immediate release from custody or in the alternative, a prompt individualized custody hearing before a neutral Immigration Judge at which the Government bears the burden of proving by clear and convincing evidence that Petitioner poses a flight risk or danger to the community. (Id., Prayer ¶¶ 2-3).

On April 23, 2026, Respondents filed an Answer to the Petition, with a supporting exhibit, contending that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2)(A) because he is an arriving alien who was paroled but never admitted; that his detention is independently mandatory under 8 U.S.C. § 1226(c)(1)(E), as amended by the Laken Riley Act, because he was charged with theft; and that his claim is unripe and unexhausted because he may request a bond hearing after six months of detention. ("Answer" at 5-13) (Dkt. No. 8). Petitioner filed a Reply on April 24, 2026. (Dkt. No. 9). The parties have consented to proceed before the undersigned Magistrate Judge in this matter. (See Dkt. Nos. 3, 6).

For the reasons stated below, the Petition is GRANTED, and Respondents are ORDERED to release Petitioner from custody subject to the conditions, if any, of his most recent order of supervision.

## II.

## BACKGROUND

Petitioner is a native and citizen of Russian who presented himself at the San Ysidro Port of Entry and applied for admission to the United States on January 9, 2024. (Petition, ¶¶ 14, 21; Declaration of Sarah Hacobian ¶ 3, Exh. B; Answer at 2). After being detained for approximately three to four days, Petitioner was then paroled into the United States by the Department of Homeland Security ("DHS"). (Petition, ¶ 22; Answer at 2). DHS issued Petitioner a Notice to Appear classifying him as an arriving alien and charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)I), as an immigrant not in possession of a valid entry document. (Petition, ¶ 23; Answer, Ex. 1).

Following his release, Petitioner complied with all conditions of supervision and attended every ICE check-in for over two years. (Petition, ¶¶ 23-24, 41; Hacobian Decl. ¶ 4)). He obtained employment authorization and worked first in the food delivery industry and later in the automotive industry. (Petition, ¶ 24). His United States citizen cousin has offered him housing, transportation, and assistance with compliance with immigration requirements. (Petition, ¶ 25; Hacobian Decl. ¶ 9; Exh. F).

On March 6, 2025, Petitioner was charged with misdemeanor petty theft at a Home Depot store (committed on December 22, 2024), under California Penal Code § 484(a). (Petition, ¶ 26; Answer at 2; Dkt. No. 1-3 at 1-2). On February 10, 2026, the state court granted judicial

diversion under Penal Code § 1001.95 and referred Petitioner to a twelve-hour anti-theft course, among other conditions. (Petition, ¶ 27; Hacobian Decl. ¶ 6; Exh. C). The diversion remains pending, with a termination hearing set for February 10, 2027; if Petitioner fails to comply with its conditions, diversion may be terminated and the charge prosecuted. (Hacobian Decl. ¶ 7; Exh. C). Petitioner has no other documented criminal history. (Petition, ¶ 28).

On April 6, 2026, Petitioner appeared for a routine ICE check-in. (Petition, ¶ 29; Answer at 2). After checking in electronically, he was asked to wait in the lobby and was subsequently taken into custody. (Petition, ¶ 30). He received no prior written notice of the reasons for his re-detention, and no hearing was held to assess whether his continued detention was justified. (Petition, ¶¶ 30-31).[1]

Petitioner has remained in ICE custody since April 6, 2026, a period of more than five months. The record does not reflect that Petitioner has received a bond hearing or any other individualized custody determination before a neutral decisionmaker during that time.

\\

\\

\\

---

[1] The record contains no notice of intent to revoke parole, no Form I-210 or similar document, and no indication that Petitioner was given an opportunity to respond before he was taken into custody on April 6, 2026. Respondents' own Statement of Facts moves directly from Petitioner's arrest for petty theft to his detention by ICE, without identifying any intervening notice or process. (See Answer at 2).

## III.

## DISCUSSION

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017); Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; Hernandez, 872 F.3d at 990. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690; Hernandez, 872 F.3d at 990. "'Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.'" Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."), appeal dismissed by, 2021 WL 1590193 (9th Cir. 2021).

Petitioner claims he was denied due process of law when ICE re-detained him without notice or a pre-deprivation hearing. (Petition, ¶¶ 29-31, 41-47).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Courts examine procedural due process claims in "two steps." Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989). Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013). First, courts consider whether the petitioner was deprived of a constitutionally protected liberty interest, and second "whether that deprivation was accompanied by sufficient procedural protections." Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir. 2022); Thompson, 490 U.S. at 460.

It is undisputed that Petitioner was paroled into the United States on January 9, 2024, and remained free for over two years before ICE re-detained him. (Petition, ¶¶ 22-24, 29; Answer at 2). Petitioner's release "gave rise to 'the most elemental of liberty interests—the interest in being free from physical detention by one's own government.'" Martinez v. Noem, 821 F. Supp. 3d 1183, 1190 (C.D. Cal. 2026) (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)). Petitioner's release also created "an implicit promise" that his liberty would be revoked only for failing to comply with the conditions of release. Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Martinez, 821 F. Supp. 3d at 1191; Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 878 (C.D. Cal. 2026); Chavarriaga Rojas v. Albarran, 826 F. Supp. 3d 1155, 1165 (N.D. Cal. 2025) ("Courts in this district consistently hold that when a noncitizen is released pending civil removal proceedings, the noncitizen has a protected liberty interes in

remaining out of immigratin custody.”). Petitioner therefore had a significant liberty interest in remaining out of immigration custody.

Having determined that Petitioner had a protected liberty interest in remaining out of custody, the Court applies the three-part test established in Mathews to determine whether the process he received was constitutionally sufficient. Under Matthews, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022).

As to the first factor, Petitioner has a significant interest in remaining out of custody given his release and the extensive time he spent out of custody in compliance with its conditions. Morrissey, 408 U.S. at 482. Martinez, 821 F. Supp. 3d at 1190-91; Medrano-Rocha, 817 F. Supp. 3d at 878; Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite his protected liberty interest, Petitioner was re-detained without notice and a pre-detention hearing. (Petition, ¶¶ 30-31). Under these circumstances, there is a high risk of erroneous deprivation of liberty. See Martinez, 821 F. Supp. 3d at 1191 (“[T]he risk of erroneous deprivation is significant without a pre-detention

Case 5:26-cv-01871-ES Document 15 Filed 10/07/2026 Page 8 of 12 Page ID #:51

hearing."). Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; Martinez, 821 F. Supp. 3d at 1191. Yet Petitioner's initial release from ICE custody reflected a determination by the government that he was neither a flight risk nor a danger to the community, and Petitioner has a strong interest in remaining at liberty unless he no longer meets those criteria. Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025); see also Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole while their removal proceedings are pending. Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), affirmed by, 905 F.3d 1137 (9th Cir. 2018); Venega-Maltez v. Semaia, 2026 WL 846035, *7 (C.D. Cal. 2026) ("Petitioner was released upon his entry into the United States, which reflected a finding that he was not a flight risk or danger to the community."). Accordingly, the second Mathews factor favors Petitioner.[2]

---

[2] Respondents' reliance on Petitioner's petty theft charge does not alter the analysis. Petitioner committed the underlying offense less than one year after his parole into the United States, and the charge has not been resolved in his favor: it remains in judicial diversion, subject to a termination hearing in February 2027, and diversion may be revoked—with the charge then subject to prosecution—if Petitioner does not comply with its conditions. (Dkt. No. 1-3 at 2-3). This conduct, and any future violation of the diversion, may bear on whether Respondents choose to make a new parole determination, see infra note 4. It does not, however, excuse the absence of any notice or opportunity to respond before Petitioner was taken into custody on April 6, 2026: the government's belief that it has a valid reason to detain a noncitizen does not eliminate its obligation to effectuate the detention in a manner that comports with due process. Ramirez Tesara v. Wamsley, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (quoting E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)). "Indeed, courts have found that a pre-deprivation hearing is still required

Regarding the third factor, "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore v. Kim, 538 U.S. 510, 518 (2003)). However, the government interest at stake here is not the continued detention of Petitioner, but its ability to detain him without notice and a pre-detention hearing, and "there is no meaningful countervailing government interest that supports detaining previously [released] noncitizens . . . without a pre-detention hearing."[3] Meneses v. Santacruz, 811 F. Supp. 3d at 1164. Thus, the third Mathews factor favors Petitioner.

Therefore, applying the Mathews factors, Petitioner was denied due process of law when he was re-detained without notice and a pre-detention hearing. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, "the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a

---

where the petitioner is initially arrested by local law enforcement and then transferred to ICE custody" or detained by ICE upon his release from local law enforcement custody. Frias Lozada v. Warden, Cal. City Det. Facility, 2026 WL 2280953, *4 (E.D. Cal. 2026); Moreover, Respondents' two statutory theories are in tension: 8 U.S.C. § 1226(c) applies to noncitizens detained under § 1226, and cannot be squared with Respondents' contention that Petitioner is subject to mandatory detention under § 1225(b)(2)(A) as an applicant for admission.

[3] "[D]etention for its own sake is not a legitimate governmental interest." Claros v. Albarran, 811 F. Supp. 3d 1062, 1070 (N.D. Cal. 2025); see also Pinchi, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.").

deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant [liberty or] property interest.'" (citations and italics omitted)); Ordonez v. Mullin, 2026 WL 1630411, *4 (C.D. Cal. 2026) ("Because each of the *Mathews* factors favors Petitioners' bid for pre-deprivation process, the Court finds that Petitioners' detention — which was accompanied by *no* process — violates the Due Process Clause." (italics in original)). And "[b]ecause Petitioner's deprivation of liberty without due process has been unlawful from its inception, [his] immediate release is required." Torres Ferrera v. Scott, 2026 WL 776145, *6 (W.D. Wash. 2026); see also Ordonez v. Mullin, 2026 WL 1630411, *4 (C.D. Cal. 2026) ("the appropriate remedy . . . is to order [Petitioner] placed in the position [he] would have been absent the due process violation—that is, [he] should be released from custody on the conditions that were initially imposed").[4]

In so concluding, the Court rejects Respondents' contention that the Petition is unripe and unexhausted because Petitioner may request a bond hearing after six months of detention. (See Answer at 11-13). As other courts have noted, "pursuit of administrative remedies would be inadequate and futile" and should be waived under the circumstances

---

[4] This Order does not preclude Respondents from making a new parole determination as to Petitioner, provided that any such determination, and any resulting detention, is preceded by constitutionally adequate notice and an opportunity to respond. See 8 C.F.R. § 212.5(e).

presented here since a "post-deprivation bond hearing . . . would not address the propriety of Petitioner's claim that he was not afforded constitutionally adequate procedural safeguards *prior to* the deprivation of his liberty interest." R.N.G. v. Semaia, No. 26-cv-02839, 2026 WL 2089544, *3 (C.D. Cal. 2026) (emphasis in original); see also E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

Because the Petition is resolved on this ground, the Court need not determine whether Petitioner's detention is properly characterized under § 1225 or § 1226(a), an issue the parties have not fully briefed in light of intervening Ninth Circuit authority. See Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1193 (9th Cir. 2026).[5]

**IV.**

**ORDER**

Accordingly, it is hereby ORDERED that the Petition (Dkt. No. 1) is GRANTED. Respondents shall immediately release Petitioner GENRIK ABGARIAN (A# 249 372 252), from immigration custody, without the imposition of any new or further restraints beyond the conditions of supervision in effect immediately prior to his April 6, 2026 re-detention. Respondents are also enjoined from re-detaining

---

[5] Because the Petition is resolved on Count One, the Court does not reach Petitioner's remaining claims under substantive due process (Count Two), the proper statutory characterization of his detention under 8 U.S.C. §§ 1225 and 1226 (Count Three), or the Administrative Procedure Act (Count Four).

Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations.

Additionally, the Court ORDERS Respondents to file a declaration by no later than September 24, 2026, confirming that Petitioner has been released from custody.

IT IS SO ORDERED.

DATED: September 21, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| LEVON TONAPETYAN,<br>Petitioner,<br>v.<br>TODD LYONS, et al.,<br>Respondents. | No. 5:26-cv-02512-AYP<br>**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS** |

## I. SUMMARY

Petitioner Levon Tonapetyan ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at an immigration detention facility in this district. In this habeas action, Petitioner challenges the legality of his re-detention and continued civil confinement, asserting that Respondents violated the Due Process Clause of the Fifth Amendment by revoking his liberty without notice, without a hearing, and without any individualized determination that detention was warranted.

Having reviewed the record, and consistent with several recent decisions in this District, the Court concludes that Petitioner's re-detention on May 5, 2026—without notice, without a hearing, and without any individualized

determination that detention was warranted—violates due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and prohibiting future re-detention absent adequate pre-deprivation notice and an individualized hearing at which the Government must justify the need to detain him.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Armenia. (Dkt. No. 8-1 at 2.) Petitioner entered the United States without inspection and was encountered by United States Customs and Border Patrol ("USCBP") on February 17, 2024. (Dkt. No. 8-1 at 4.) On that same date, USCBP served Petitioner with a Notice to Appear, Form I-862 and released him on parole. (Dkt. No. 1 at 17.)

Petitioner contends that he has remained in removal proceedings and has resided freely in the community for the two (2) years following his parole into the United States. (Dkt. No. 1 at 4 and Dkt. No. 9 at 2.) Petitioner represents that during this time he has maintained gainful employment at a bakery and is the sole financial provider for his household. (Dkt. No. 1 at 2.)

Petitioner was arrested on or about April 29, 2026, for violation of California Penal Code § 273.5(A), felony infliction of corporal injury on a spouse/cohabitant. (Dkt. No. 8-1 at 4.) Following Petitioner's arrest, ICE's Pacific Enforcement Response Center ("PERC") lodged an Immigration Detainer with the Glendale Police Department. *Id.* The Glendale Police Department declined to honor the Immigration Detainer and subsequently released Petitioner into the community. *Id.* Petitioner's wife attests that she did not call the police, she did not make a complaint in relation to the incident, and she does not consider Petitioner to be a danger. (Dkt. No. 1 at 22.) Petitioner represents that he has no criminal convictions, and no criminal charges have

Case 5:26-cv-02512-AEP Document 12 Filed 10/01/26 Page 3 of 13 Page ID #:144

been filed as a result of his April 29, 2026, arrest. (Dkt. No. 1 at 4 and Dkt. No. 10.)

On May 5, 2026, ICE Enforcement and Removal Operations ("ERO") arrested Petitioner as he walked toward his place of employment. (Dkt. No. 8-1 at 3.) Petitioner asserts that following his arrest he has not received a hearing or any individualized determination as to whether his detention is necessary. (Dkt. No. 9 at 2-3.) Petitioner remains at the immigration detention facility as of the filing of the instant Petition. (Dkt. No. 1 at 13.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 on June 11, 2026. (Dkt. No. 1.) Respondents filed their Answer (the "Answer") on June 19, 2026. (Dkt. No. 8.) Petitioner filed his Reply ("Reply") on June 22, 2026. (Dkt. No. 9.) Both parties have consented to proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III. DISCUSSION

Petitioner argues that his re-detention and continued civil confinement violate the Fifth Amendment's guarantee of due process because Respondents revoked his liberty without providing notice, without a pre-deprivation hearing, and without any opportunity to contest whether he posed a flight risk or a danger to the community. Petitioner therefore seeks immediate release, arguing that Respondents' actions contravened the procedural protections the Constitution requires before depriving an individual of liberty.

Respondents assert that Petitioner is properly detained under 8 U.S.C. § 1225(b) during his removal proceedings because he was classified as an "arriving alien" during his initial inspection and was found inadmissible for lack of valid documentation. (Dkt. No. 8 at 4.) Respondents further contend that this Court should deny the Petition because Petitioner has not shown that Respondents lacked authority to detain him or that he is entitled to immediate

Case 5:26-cv-01921-AEP Document 12 Filed 10/07/26 Page 4 of 13 Page ID #:115

release. (Dkt. No. 8 at 4-5.)

**A. The Court Has Subject Matter Jurisdiction.**

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id*. (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of Petitioner's due process claim.

**B. Petitioner's Detention Is Governed By 8 U.S.C. § 1226(a).**

Respondents assert that Petitioner's detention is governed under 8 U.S.C. § 1225(b)(1) because he "was classified as an 'arriving alien' during his initial inspection and was found inadmissible for lack of valid documentation." (Dkt. No. 8 at 4.)

For the reasons set forth below, having reviewed the record, the Court finds that Petitioner had previously been inspected, admitted, and placed in removal proceedings pursuant to 8 U.S.C. § 1226(a) at the time of his May 5, 2026, re-detention. Petitioner has a liberty interest and thus may not be detained without adequate constitutional protections.

Section 1226(a) applies to a noncitizen who is "detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). In *Jennings v. Rodriguez*, the Supreme Court articulated its understanding of the differentiation between §§ 1225 and 1226. *Jennings v.*

*Rodriguez*, 583 U.S. 281, 289 (2018). "Jennings held the Government may 'detain certain [noncitizens] seeking admission into the country' under § 1225(b) while § 1226 'authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings.'" *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1101 (C.D. Cal. 2025), judgment entered sub nom. *Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025) (quoting *Jennings*, 583 U.S. at 289).

Respondents do not dispute, and the documents in Respondents' evidentiary submission before the Court demonstrate that Petitioner was previously encountered by USCBP on February 17, 2024, and released on parole pending the outcome of his removal proceedings. (Dkt. No. 8-1 at 2.) Respondents correctly note that the express language of § 1225(b)(1)(A)(ii) determines that the statute applies to a noncitizen "who is *arriving* in the United States." (emphasis added). (Dkt. No. 8 at 3.) Respondents cite to no authority to support the notion that Petitioner's classification as an "arriving alien" during his initial inspection on February 17, 2024, somehow extinguishes his prior admission on parole, and the fact that he has been residing in the United States for over two (2 years) pending the outcome of his removal proceedings. On the record before the Court, Respondents have failed to demonstrate how Petitioner could plausibly be classified a noncitizen "arriving in the United States" or an "applicant for admission" under the language of § 1225, where he has been residing in the United States for over two (2 years) and has previously been admitted into the country on parole.

As such, consistent with the reasoning in *Jennings,* the express language of the Immigration and Nationality Act (the "INA"), and other courts in this district, the Court finds that Petitioner was a noncitizen already in the country pending the outcome of his removal proceedings at the time of his sudden re-detention on May 5, 2026. Therefore, Petitioner's detention is governed under 8

U.S.C. § 1226(a), and his liberty interest may not be revoked absent the constitutional protections afforded to noncitizens detained pursuant to this section.

**C. Respondents' Deprivation of Petitioner's Liberty Without Notice, a Hearing, or Any Individualized Determination that his Detention is Warranted Violates Due Process.**

Petitioner argues that his sudden re-detention without notice, without a hearing, and without any individualized determination that detention was warranted—after more than two years of residing freely in the community following his release on parole by USCBP—violates the Fifth Amendment's guarantee of due process.

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *See Zadvydas*, 533 U.S. at 690–91.

When USCBP paroled Petitioner into the United States upon their initial encounter on February 17, 2024 (Dkt. No. 8-1 at 2), it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

The Court analyzes Petitioner's due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest.

424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs strongly in Petitioner's favor.

**1. Private Interest**

Petitioner argues that his sudden re-detention without notice or a pre-deprivation hearing directly infringed upon the core liberty interest protected by the Fifth Amendment. Petitioner contends that Respondents deprived him of the ability to contest whether he posed a danger or flight risk before revoking his conditional liberty.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and

probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d 1025, 1032–33 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that due process principles prohibit Respondents from revoking his release and re-detaining him absent adequate pre-deprivation process.

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in remaining free from custody. Petitioner asserts he lived free from physical restraint for over (2) years, he has maintained gainful employment at a bakery, and he is the sole financial provider for his household. (Dkt. No. 1 at 2.) Petitioner further contends that he has no criminal convictions, and no criminal charges had been filed against him at the time of his re-detention on May 5, 2026. (Dkt. No. 1 at 4 and Dkt. No. 10.) While Petitioner remained subject to the conditions of his parole during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025)

(quoting *Morrissey*, 408 U.S. at 482).

In consideration of the guiding principles and relevant authority, the Court finds that Petitioner's interest in remaining at liberty is both substantial and well-established. Accordingly, the Court concludes that the Due Process Clause protects Petitioner's substantial interest in maintaining his freedom from confinement. *See Cruz*, 2025 WL 4051129 at 2–6; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole*). See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to provide Petitioner with adequate pre-deprivation process creates a significant risk of erroneous deprivation. Respondents provided no notice, no pre-deprivation hearing, and no opportunity to contest whether he posed a flight risk or a danger to the community. (Dkt. No. 9 at 2-3).

The procedure employed here creates a substantial risk of error. Petitioner was suddenly arrested as he walked toward his place of employment. (Dkt. No. 8-1 at 3.) As *Saravia* explained, due process in this context requires a prompt, pre-deprivation hearing before a neutral decisionmaker at the time of rearrest, not some time long after the liberty loss has already occurred. *Saravia,* 280 F. Supp. 3d at 1194–97. The court in *Cruz v. Lyons*, considering a re-detention at a routine appointment without prior notice, likewise concluded

that such procedures pose a constitutionally unacceptable risk of erroneous deprivation. *See Cruz*, 2025 WL 4051129 at 4.

The record indicates that upon their initial encounter with Petitioner, USCBP served him with a Notice to Appear, Form I-862 and released him on parole. (Dkt. No. 1 at 17.) Petitioner contends that he has remained in removal proceedings and has resided freely in the community for the two (2) years following his parole into the United States. (Dkt. No. 1 at 4 and Dkt. No. 9 at 2.) Yet despite Petitioner's more than two (2) years of residence, maintaining gainful employment and residing freely in the community, Respondents provided no advance process to assess whether revoking his release would further the permissible purposes of immigration detention. Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process. On this record, the Court concludes that the risk of erroneous deprivation is unacceptably high.

**3. Government Interest**

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who the Government has previously found capable of residing safely in the community.

Courts considering similar re-detentions have consistently concluded that the Respondents' interest in bypassing pre-deprivation procedures is low. *Cruz v. Lyons* held that, where a noncitizen has long been released and compliant, the Respondents have no meaningful countervailing interest in effecting a sudden re-detention without a hearing, particularly because ICE routinely conducts custody hearings and the administrative burden of providing one is

minimal. *See* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). Likewise, in *López*, the court emphasized that immigration custody hearings are "routine and impose a minimal cost," and that the government's interest in re-arresting a compliant supervisee without a hearing is "low." 2025 WL 2959319, at *6 (cleaned up). *Garro Pinchi* similarly held that due process requires the Government to identify an interest "beyond its own administrative practices" to justify depriving an individual of liberty without pre-deprivation protections, and that detention "for its own sake" or due to the absence of established procedures is not a legitimate governmental interest. 792 F. Supp. 3d at 1035–36. Additionally, *Rodriguez Diaz* reiterated that where a noncitizen has long complied with reporting requirements, the Government's interest in re-detaining that individual without a hearing prior to detention is especially weak. 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

These decisions align with broader Ninth Circuit authority recognizing that the Government has no legitimate interest in detaining individuals who can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). They also reflect *Saravia*'s conclusion that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Here, Respondents do not identify any administrative or public-safety reason they could not have provided Petitioner with notice and an opportunity to be heard prior to re-detention. Nor do Respondents identify any individualized risk posed by Petitioner at the time of his re-arrest. Under

*Mathews*, the Government's interest in bypassing pre-deprivation process in these circumstances is minimal.

Accordingly, the third *Mathews* factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Respondents' lack of constitutionally adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Respondents' re-detention of Petitioner on May 5, 2026, without adequate pre-deprivation process, violated due process and that he should be released forthwith.

**IV. CONCLUSION**

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Levon Tonapetyan's (A#244-401-241) immediate release and restoration of liberty to the conditions existing at the time of his detention on May 5, 2026, along with his personal belongings, including his identification, passport, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine him prior to his re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be

provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED: July 21, 2026



ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT H

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| VLADIMIR HAMBARDZUYMYAN,<br><br>Petitioner,<br><br>v.<br><br>TODD M. LYONS, et al.,<br><br>Respondents. | Case No. 5:26-cv-02509-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## PROCEDURAL HISTORY

On May 11, 2026, petitioner ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 3 at 1-12)[1] with three attached exhibits (id. at 13-59). The Petition alleges the following grounds for habeas relief: (1) "Habeas Corpus – Unconstitutional Civil Detention;" (2) "Violation of Fifth Amendment Procedural Due Process;" (3)

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

Case 5:26-cv-02594-DEB Document 11 Filed 05/27/26 Page 2 of 10 Page ID #:106

"Violation of Substantive Due Process;" and (4) "All Writs Act – Preservation of Jurisdiction." (Petition at 10-12).

On May 19, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 6), Respondents filed an Answer to the Petition ("Answer") (Docket No. 9), with two attached exhibits (Docket No. 9-1).

On May 22, Petitioner filed a Reply.

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND

Petitioner is a 39 or 40 year-old native and citizen of Armenia. (Petition at 2, 5-6, 15). On or about February 23, 2021, Petitioner and his son entered the United States. (Id.; see id. at 19 (the Notice to Appear states that Petitioner entered through the Calexico Port of Entry on February 17, 2021)). At the time of entry, Petitioner was detained near the border for approximately six days and was released into the community with a temporary ankle monitor (which was later removed based on Petitioner's demonstrated compliance). (Id. at 3, 6-7,16).

On an unspecified date (following entry), Petitioner and his son pursued asylum-related relief through the United States Citizenship and Immigration Services (USCIS). (Id. at 2, 6, 16).[2] On December 25, 2022, Petitioner's wife and daughters entered the United States. (Id. at 3).

For years, Petitioner, a married father of three children under 18 years of age, resided peacefully within the community, complied with his immigration obligations, remained available to immigration authorities, and attended appointments and check-ins with Immigration and Customs Enforcement ("ICE").

---

[2] The status of Petitioner's attempted asylum-related relief is unknown.

(Id. at 3, 7, 16).[3] Petitioner worked lawfully pursuant to employment authorization and supported his family by driving for Uber. (Id. at 3, 7, 17). Petitioner has substantial community ties, and he does not present a danger to the community or a flight risk. (Id. at 8).

On May 5, 2026, when Petitioner appeared for a routine, scheduled check-in, he was detained by ICE. (Id. at 3, 7, 16). On May 12, 2025, the Department of Homeland Security issued Petitioner a Notice to Appear, charging Petitioner with removability under Immigration and Nationality Act § 212(a)(7)(A)(i)(I) based on his being an immigrant who, at the time of application for admission into the United States, was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document. (Id. at 2, 6, 15, 19-22).

Petitioner is currently detained at Desert View Annex Detention Facility. (Id. at 2, 4, 6, 16).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

---

[3] In the Answer, Respondents assert that Petitioner had "multiple violations of his release conditions, including a recent arrest for Disorderly Conduct: Intoxicated with Drugs/Alcohol." (Answer at 2, 5, citing Docket No. 9-1 at 3-6 [Record of Deportable/Inadmissible Alien]). Since Respondents do not state (or provide evidence of) Petitioner's release conditions, the Court is unable to find that Petitioner violated his release conditions.

Case 5:26-cv-02591-E Document 1 Filed 10/07/26 Page 79 of 122 Page ID #:79

Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

## IV.

## DISCUSSION

### A. Petitioner's Second Claim Warrants Habeas Relief.

As noted above, the second claim in the Petition alleges that Petitioner's detention violates his right to procedural due process under the Fifth Amendment. (Petition at 10-11; see Reply at 2-3).

#### 1. Procedural Due Process.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. All persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," are entitled to protection under this provision of the Constitution. Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Id. at 690; see also United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited

/ / /

/ / /

exception.”). “Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.” Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

Generally, the Due Process Clause “requires some kind of a hearing *before* the State deprives a person of liberty or property.” Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). In Mathews v. Eldride, 424 U.S. 319 (1976), the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally sufficient to protect a liberty interest: The private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Id. at 335; see Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that “Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context”); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews “to the context of immigration detention”).

Thus, the Court considers the Mathews factors as applied to Petitioner’s claim.

/ / /

/ / /

/ / /

a. Private Interest

Petitioner has resided in the United States for more than five years following his initial contact and release by immigration officials. During that time, he has lived peacefully within the community, he has developed community ties, he has worked lawfully, and he has complied with his immigration obligations. (Petition at 3, 7-8, 16-17). He sought asylum-related relief. (Id. at 2, 6, 16).

Accordingly, Petitioner's liberty interest in remaining out of custody is protected under the Due Process Clause. See e.g., Cruz v. Lyons, Case No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *3 (C.D. Cal, Nov. 6, 2025) (finding the petitioner had a protectable liberty interest in remaining on supervised immigration release); C.A.R.V. v. Wofford, Case No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *10 (E.D. Cal. Nov. 1, 2025) (finding the petitioner had a constitutionally protected liberty interest in remaining out of ICE custody based on the "approximately four years on parole" preceding his re-detention).

Pursuant to the holding in Mathews, Petitioner should have been afforded a hearing prior to being detained. Petitioner has a substantial private interest in remaining free from detention, living in his home, engaging in lawful employment and generally participating in the community, all while out of custody. See C.A.R.V., 2025 WL 3059549, at *10 ("As to private interest, during his approximately four years on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and built a relationship with his fiancé and many others in his community. . . . Petitioner has a substantial private interest in being out of custody and his detention denies him that liberty interest."); Pinchi, 792 F. Supp. 3d at 1034-35 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two

years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); Manzanarez v. Bondi, Case No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding that petitioner had a private interest in remaining free from detention where "he was released on his own recognizance for over two years and complied with his [order of release on recognizance] conditions during that time"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom.").

b. Risk of Erroneous Deprivation

The absence of a pre-detention hearing under these circumstances presents an unacceptable risk that the government would erroneously deprive Petitioner of his liberty interest. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. Zadvydas, 533 U.S. at 690-91. The risk of a wrongful deprivation is particularly high here given the evidence that Petitioner was released in 2021. Respondent has not argued that Petitioner poses a risk of flight or a danger to the community. The government clearly did not believe Petitioner to be a risk of flight or a danger to the community when he was released in 2021; otherwise, the government would not have released him. Cf. e.g., Sequen v. Albarran, Case No. 25-cv-06487-PCP, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025); Singh v. Andrews, Case No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025). As noted, ICE has *already determined* that Petitioner does not pose a flight risk or danger to his community when it released

Case 5:26-cv-02594-1 Document 1 Filed 10/07/26 Page 83 of 122 Page ID #:83

him in 2021. There is no evidence indicating that this decision was erroneous or should otherwise be reassessed.

c. Government Interest

As for the third Mathews factor, "as many other courts have recognized, there is no meaningful countervailing Government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." Cruz, 2025 WL 4051129, at *4 (collecting cases). Here, the government has made a persuasive argument as to why Petitioner should be detained. Moreover, Petitioner was released in 2021. "[T]he Government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lessor bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). Moreover, "any fiscal or administrative burden on the additional procedural safeguard of a hearing before neutral adjudicator imposes on the Government is at most minimal'[.]" Sun v. Santa Cruz, Case No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). There are no facts in the instant record which would support a finding that the government's decision in 2021 to release Petitioner was made in error.

Therefore, the Court finds that there is a great risk that the lack of a pre-detention process – a hearing to determine whether Petitioner, in fact, presents a risk of flight or danger to the community – has resulted in his unnecessary detention. See Mourey v. Bowen, Case No. 5:25-cv-03262-WLH (DTB), 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Respondents have offered no reason – much less any compelling reason – as to why the government should be able to detain Petitioner, who has developed a significant liberty interest during his more than four years on release, without first providing him with notice and opportunity for a hearing before a neutral adjudicator.

Accordingly, the Court concludes that the government's detention of Petitioner on May 12, 2025, without adequate pre-detention process, when he had previously been released and had been compliant with his release, violated his right to procedural due process under the Fifth Amendment.

Given the violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, Case No. 5:25-cv-KK-DSR, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release on his prior conditions of release. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, Case No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

/ / /

/ / /

For the reasons set forth above, the Petition is GRANTED, and a writ shall issue ordering Petitioner's immediate release from custody.[4]

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner from custody, subject to the same conditions (if any) that Petitioner was subject to at the time he was arrested and detained, and return all property confiscated from him during his arrest and processing into detention; (3) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (4) Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: May 27, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court's determination that Petitioner is entitled to habeas relief on the second claim alleged in the Petition renders it unnecessary for the Court to address the other claims alleged in the Petition.

# EXHIBIT I

Case 5:26-cv-00882-MCS-DMK Document 31 Filed 07/30/26 Page 1 of 3 Page ID #:87

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SLAV PAVLINOV PEEV,<br>Petitioner,<br>v.<br>D. MARIN, et al.,<br>Respondents. | Case No. 5:26-cv-00882-MCS-DMK<br>ADELANTO<br><br>ORDER RE: REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, (Pet., ECF No. 1), the other records on file herein, the Report and Recommendation of the United States Magistrate Judge, (R. & R., ECF No. 29), and Respondents' Objections to the Report, (Objs., ECF No. 31). The Court has engaged in a de novo review of those portions of the Report to which Respondents have objected. Having completed its review, the Court accepts the report, findings, and recommendations of the Magistrate Judge, except with respect to the recommended relief, on which the Court respectfully disagrees with the Magistrate Judge in part.

The Magistrate Judge recommends that Respondents be ordered to "immediately release Petitioner from custody on Petitioner's prior conditions of release." (R. & R. 5.) The Court agrees with Magistrate Judge's assessment that

immediate release is appropriate here given that Respondents have not shown that they provided Petitioner with a "meaningful opportunity to contest" the reasons for Respondents revoking his supervision as previously ordered. (*Id.* at 3; *see* Order Re: Mot. for TRO 10, ECF No. 9.) Respondents object to the remedy of immediate release because Petitioner is approaching his 180th day in custody, so he will soon be eligible for a bond hearing under *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). The Court overrules Respondents' objection for two reasons. First, while the Court has held that post-deprivation process can, in some situations, cure pre-deprivation due process violations, *e.g.*, *Aguilar v. Semaia*, No. 5:26-cv-00023-MCS-SSC, 2026 WL 166906, at *4–5 (C.D. Cal. Jan. 16, 2026) (Scarsi, J.), the Court has never held that a hypothetical future hearing, which does not appear to be scheduled, is sufficient. Second, as Respondents concede, *Rodriguez* bond hearings are designed as a "remedy for a claim of excessively prolonged detention during removal proceedings." (Objs. 5.) But Petitioner's claim here is not that his detention has been excessively prolonged, but that the process Respondents used at the initial moment when they detained him was deficient. (Pet. ¶¶ 68–71.) Respondents leave unexplained how a *Rodriguez* hearing can cure that initial defect.

In addition to release from custody and relief attendant thereto, Petitioner prays for an order enjoining Respondents from re-detaining Petitioner or removing him to a third country absent certain processes. (*Id.*, Prayer for Relief ¶¶ F–H.) The Magistrate Judge recommends granting the proposed relief in part, specifically entering an order barring Respondents from re-detaining Petitioner "without providing at least seven (7) days' notice and a pre-deprivation bond hearing before an Immigration Judge at which the Government bears the burden of proof." (R. & R. 5.) Respondents object to this recommendation as beyond the scope of the habeas petition. (Objs. 2–4.) The Court respectfully agrees with Respondents and sustains the objection. The factual allegations presented in the petition pertain to Petitioner's claims that Respondents wrongfully detained him without adequate process; the

arguments have no bearing on Respondents' anticipated supervision or handling of Petitioner *after* his release from custody. (*See* Pet. ¶¶ 68–71.) The Court will not grant habeas relief that exceeds the scope of the claims in the petition or is based on speculation about what might happen after Petitioner is released. *See, e.g.*, *Baca Garcia v. Warden*, No. 2:26-cv-00998-CAS-JDE, 2026 U.S. Dist. LEXIS 35758, at *6–7 (C.D. Cal. Feb. 20, 2026) ("[T]he fact that Petitioner is subject to re-arrest and re-detention that may violate due process or statutory authority is too speculative and hypothetical to give rise to a threat of injury sufficient to satisfy Article III standing. Petitioner does not demonstrate that his re-detention is more than speculative, and the Court cannot adjudicate a hypothetical future injury without a factual record." (citation omitted)); *Mora Gutierrez v. Noem*, No. 26-cv-112-RSH-JLB, 2026 U.S. Dist. LEXIS 9272, at *4–5 (S.D. Cal. Jan. 16, 2026) (declining to issue "a permanent injunction regulating the terms under which Petitioner may be detained in the future" because such an injunction would "exceed[] the scope of relief available to Petitioner on his habeas petition").

Finally, the Magistrate Judge further recommends that Respondents be ordered "to file a notice of compliance within 72 hours of entry of Judgment." (R. & R. 5.) The Court does not perceive this requirement as necessary given that Petitioner does not seek this relief in his petition. (*See* Pet., Prayer for Relief.)

IT IS THEREFORE ORDERED that Judgment be entered granting the Petition. Respondents shall immediately release Petitioner Slav Pavlinov Peev (A# 062-772-494) on his prior conditions of release and return any confiscated property and documents upon his release.

DATED: July 30, 2026

Mark C. Scarsi

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

# EXHIBIT J

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| MILENA APERYAN,<br>Petitioner,<br>v.<br>FERETI SEMAIA, et al.,<br>Respondents. | No. 5:26-cv-00699-WLH-AYP<br>**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS** |

## I. SUMMARY

Petitioner Milena Aperyan filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for injunctive relief. Ms. Aperyan is currently in the custody of the Immigration and Customs Enforcement ("ICE") at the Adelanto Detention Facility. Immigration authorities apprehended the Petitioner in 2024 after she entered the United States and she has resided in the United States since her entry on September 19, 2024. On September 20, 2024, Ms. Aperyan was deemed subject to removal under INA 212(a)(7)(A)(i) and has remained in compliance with her supervision conditions since that time. (Dkt. No. 1 at 12.) Petitioner is in removal proceedings but does not have a final order of removal. (Dkt. No. 1 at 2; Dkt. No. 15 at 8–9.)

In this habeas action, Ms. Aperyan challenges the lawfulness of her detention by ICE, pursuant to § 1126 and *Bautista*, the Due Process Clause, and

the Administrative Procedures Act ("APA"). The Petition also includes an application for preliminary relief as a temporary restraining order or preliminary injunction, requesting the same relief as in the Petition. Petitioner seeks immediate release based on compelling humanitarian considerations arising from her role as the primary caregiver of her disabled infant son.

Following several recent decisions in this District, the Court finds that Petitioner's sudden detention—without any meaningful pre-or post-deprivation process—violates due process. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing her re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to detain her.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner Milena Aperyan is a 21-year-old native and citizen of Armenia. (Dkt. No. 1 at 6.) Petitioner was arrested by immigration officers at the port of entry in Otay Mesa, California, on September 19, 2024. (Dkt. No. 15, at 8.) She entered the United States, as an "asylum-seeking noncitizen," (Dkt. No. 1 at 2), on September 19, 2024, and was apprehended by immigration authorities that same day (Dkt. No. 15, at 2.). On September 20, 2024, the Department of Homeland Security ("DHS") filed a Notice to Appear ("NTA") charging Ms. Aperyan as subject to removal under INA section 212(a)(7)(A)(i) (codified in 8 U.S.C. § 1182(a)(7)(A)(i)) for entering as an applicant for admission who is not in possession of valid unexpired immigrant visa, reentry permit, border crossing card or other valid entry document.[1] (Dkt. No. 1 at 8.) Ms. Aperyan was released

[1] Petitioner also claims the Department charged her as "an alien present in the United States without having been admitted or paroled" pursuant to INA §212(a)(6)(A)(i). However, the Petition and subsequent NTA evidence submitted by the Respondents do not include that charge. Thus, the Court will proceed considering only the INA §212(a)(7)(A)(i) charge.

Case 5:26-cv-00594-AEP Document 19 Filed 03/27/26 Page 3 of 12 Page ID #:238

from custody subject to supervision under Immigration and Customs Enforcement's ("ICE's") Non-Detained/Alternatives to Detention Unit ("ND/ATD"), which included regular reporting to ICE. (Dkt. No 15, at 8.) Ms. Aperyan was ordered to appear at a future hearing before an Immigration Judge ("IJ") scheduled for May 6, 2026, at 1:00 PM. *Id.* at 14.

From her time of entry in September 2024 until January this year, Petitioner claims she has remained in compliance with her supervision conditions. (Dkt. No. 1.) On January 9, 2026, pursuant to the conditions of her release, Petitioner appeared as instructed for a routine check-in with the ICE Alternatives to Detention Unit in Los Angeles, California. (Dkt. No. 1 at 2; Dkt. No 15, at 8.) At the check-in, she was issued a Form I-213[2] (Record of Deportable/Inadmissible Alien) on January 9, 2026, alleging "numerous violations" of her release. (Dkt. No. 15, Ex. B.) Petitioner was arrested by ICE Enforcement and Removal Operations officers. *Id.* Petitioner was not given any specifics or notice of what the violations were before the time of detention. (Dkt. No. 1.) She was then transferred to the Adelanto Detention Facility. *Id.* at 2. Until her re-detention, Petitioner had been out of custody for a year and a half. *Id.* At the time of her arrest and re-detention, she was the primary caretaker of a then fifteen-month-old disabled infant child. *Id.* at 9.

The Government submitted supplemental evidence at the request of the Court. (Dkt. No. 15.) It submitted Form I-831 (Record of

---

[2] Form I-213, Record of Deportable/Inadmissible Alien, provides the basis to support DHS's position that a person should be removed from the United States. It captures a range of information regarding a noncitizen apprehended by DHS to support the factual allegations and charge(s) of removability contained in the NTA. This includes biographic information, possible criminal records, any history of apprehension and detention by immigration authorities, and other relevant information. U.S. DEP'T OF JUST., *Descriptions of Forms and Supporting Documents*, https://www.justice.gov/d9/2024-09/02._sept_24_descriptions_of_forms_and_supporting_documents.pdf.

Deportable/Inadmissible Alien) dated January 9, 2026, which states that Petitioner had a negative result for National Crime Information Center ("NCIC") check and was thus not compliant with her ATD release conditions because of "numerous violations while under the ISAP program." *Id.* at 8. This finding was dated the same day of Petitioner's re-detention. *Id.*

Petitioner disputes that she has "numerous violations under the ISAP program." In her Petition, Ms. Aperyan argues that she has "complied with immigration reporting requirements prior to detention." (Dkt. No. 1 at 12, 32 ¶52.) In her Reply to the Supplemental Evidence, Petitioner argues that the government has not identified the dates of the alleged missed appointments, how many appointments were missed, what notice was sent and whether appoints were later rescheduled or excused. (Dkt. No. 18 at 7.) Petitioner further argues that she was never given a reason for her detention, or an opportunity to respond to the reasons for her detention. *Id.* Further, Petitioner argues that a missed appointment would not support the government's decision to re-detain her as it does not establish she is a flight risk. *Id.*

Petitioner filed the instant habeas petition on February 13, 2026. (Dkt. No. 1.) Respondents filed their Answer on March 3, 2026. (Dkt. No. 9.) Petitioner filed a Reply on March 11, 2026. (Dkt. No. 12.) The parties appeared for a hearing on March 20, 2026. (Dkt. No. 14.) Parties submitted supplemental briefing. (Dkt. Nos. 15, 18.) Both parties have consented to proceed before the Magistrate Judge. (Dkt. Nos. 16, 17.)

## III. DISCUSSION

Petitioner argues that her ongoing confinement violates the INA, the APA and the Fifth Amendment due process. The Respondents argue the Court lacks Jurisdiction under 8 U.S.C. § 1252 and Petitioner is not entitled to a bond hearing under 8 U.S.C. § 1226(a).

**A. The Court Does Not Lack Subject Matter Jurisdiction.**

The Court begins by addressing Respondents' argument that the federal courts lack subject matter jurisdiction over Petitioner's habeas claims.

Petitioner seeks habeas relief pursuant to 28 U.S.C. § 2241. Section 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing *INS v. St. Cyr*, 533 U.S. 289, 301–03 (2001)). Petitioner here advances a classic habeas claim—that her confinement by federal immigration authorities violates the Due Process Clause and the APA.

Respondents nonetheless argue that Congress stripped the federal courts' habeas jurisdiction over claims like Petitioner's through two provisions of the immigration laws, 8 U.S.C. §§ 1252(g) and 1252(b)(9). (Dkt. No. 9 at 5–9.) However, as courts in this district have found, Respondents' arguments cannot be reconciled with Supreme Court and Ninth Circuit authority. *See, e.g.*, *Hernandez Cruz v. Noem*, No. 8:25-cv-02566-SB-MAA, 2025 WL 3482630, at *1–2 (C.D. Cal. Dec. 2, 2025); *Altamirano Ramos v. Lyons*, 809 F. Supp. 3d 1015, 1019 (C.D. Cal. 2025).

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . " 8 U.S.C. § 1252(g). "The Supreme Court has instructed that we should read § 1252(g) narrowly." *Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of*

Case 5:26-cv-00594-AEP Document 19 Filed 03/27/26 Page 6 of 12 Page ID #:261

*California*, 591 U.S. 1, 19 (2020)). Section 1252(g) thus applies only to "those three specific actions themselves." *Id.* at 996.

Respondents argue that Petitioner's claims fall within one of the three listed actions because his "detention arises from the decision to *commence* such proceedings against him." (Dkt. No. 9 at 5–6.) (emphasis added). But the Supreme Court has refused to "interpret [Section 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) (citing *Reno v. American-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482–83 (1999)). Rather, it has construed Section 1252(g) to apply to the "particular evil" it was directed against: "attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. Petitioner's claims challenge his detention, not the Government's "prosecutorial discretion" to "commence" removal proceedings. As such, Section 1252(g) does not apply.

Nor does Section 1252(b)(9) apply to Petitioner's habeas claims. Section 1252(b)(9) funnels "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken ... to remove an alien" into the procedures for review of final orders of removal—namely, petitions for review in the circuit courts. 8 U.S.C. § 1252(b)(9). Consistent with its construction of Section 1252(g), the Supreme Court has rejected an "expansive interpretation of" Section 1252(b)(9) that would apply to any claims that might conceivably "aris[e] from" immigration enforcement. *Jennings*, 583 U.S. at 293 (plurality). Among other problems, such an interpretation would render detention claims "effectively unreviewable" because, "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place." *Id.* Accordingly, the Court has twice held that Section 1252(b)(9) does not apply to

noncitizens' claims challenging their detention without a bond hearing. *Id.*; *Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

Petitioner's claims—like those at issue in *Jennings* and *Preap*—do not seek review of an order of removal or challenge "the decision to detain them in the first place or to seek removal [as opposed to the decision to deny them bond hearings]." *Preap*, 586 U.S. at 402. Accordingly, Section 1252(b)(9) does not preclude this Court from considering Petitioner's claims.

**B. Petitioner's Detention Violates Due Process.**

Petitioner argues that her ongoing confinement violates due process. As an initial matter, the Court observes that Respondents did not respond to Petitioner's due process claim in their Answer. (Dkt. No. 9.) Accordingly, the Court construes Respondents' failure to address Petitioner's due process claim as a concession. *See* e.g., *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession). In the interest of being thorough, the Court will still analyze the merits of Petitioner's Due Process claim.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The Fifth Amendment provides that "[n]o person shall…be deprived of…liberty…without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States,

"including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–1033(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d at 1032–1033 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that procedural due process principles prohibit the Government from re-detaining her without adequate pre-deprivation process or a material intervening change in circumstances.

In reaching this conclusion, the Court is guided by the analysis in a decision by District Judge Mark Scarsi in *Cruz v. Lyons*, No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). There, ICE

detained the petitioner, who had been paroled into the United States a decade earlier, when she appeared as instructed for an appointment with United States Citizenship and Immigration Services. As here, ICE did not provide the petitioner notice or a hearing before detaining her. And as here, the petitioner had complied with her release conditions throughout her time on parole. Judge Scarsi found that the petitioner's detention violated her due process rights and issued a temporary restraining order requiring the petitioner's release and preventing her re-detention without a pre-deprivation hearing. *Id.* at *3; *see Cruz v. Lyons*, No. 25-CV-02879, 2025 WL 3443146 (C.D. Cal. Dec. 1, 2025) (granting preliminary injunction a month later). *See also Meneses v. Santacruz*, No. 2:25-cv-11206-MCS-PVC, 2025 WL 3481771, at *4 (C.D. Cal. Dec. 2, 2025) (granting preliminary injunction requiring release of noncitizen based on substantially similar analysis).

As in *Cruz*, the Court considers Petitioner's procedural due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). *Mathews* is not a bright-line-test but rather a flexible test depending on the different circumstances. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). Here, the *Mathews* factors tip in favor of Petitioner.

**1. Private Interest**

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her settled life out of custody. Petitioner has lived in the United States for approximately one and a half years, during which time she has served as the primary caregiver to her disabled infant child and developed ties with her family and community. (Dkt. No. 1 at 31.) While Petitioner remained subject to supervision during this time, "a person who is in

fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles h[er] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Petitioner resided in the United States for approximately a year and half before her recent re-detention. (Dkt. No. 1 at 2.) As her circumstances illustrate, a person can develop meaningful ties in such a relatively short period of time. Following her release from immigration custody, Petitioner has been the primary caretaker of a disabled fifteen-month-old infant child, has a stable residence with family support, and deepened her connections with her family and communities in the United States. (*See* Dkt. No. 1 at 31, Exhs. C, E.) (describing Petitioner's son's disabilities and how she is the primary caregiver, as well as connections with her community and church in the United States while released on supervision). While individuals apprehended shortly after entry in the United States may have "a lesser liberty interest" "at the margin" than other noncitizens who have resided in the United States for decades, "the same important interest is at stake—freedom from prolonged detention." *Diouf*

*v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

Consistent with this conclusion, multiple courts have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods comparable to those at issue here. *See, e.g., Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under Section 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

The Court therefore concludes that the Due Process Clause protects the Petitioner's substantial liberty interest in maintaining her freedom from confinement.

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing." *Cruz v. Lyons,* No. 25-CV-02879, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S.

at 699. But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

Petitioner is not a flight risk or danger. Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 25-CV-02198, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released under ATD. (Dkt. No. 15 at 8.) "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk. Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

The risk of a wrongful deprivation is especially high here given evidence that Petitioner has no criminal record, has argued her compliance with the terms of her parole, and has maintained required contacts with the federal government, including the one that precipitated her detention. (Dkt. No.1; Dkt. No. 15 at 7–9.) Since her release, Petitioner has not given any reason to think that the Government's determination was in error. Though the government alleges a vague statement that she has "numerous violations while under the ISAP program," it provides no documentation as to what those alleged violations were, when they occurred and what notice was given to Petitioner. An ISAP violation can be as miniscule as a missed app prompt or as substantial as a new criminal arrest. Given that Petitioner was picked up at a routine ICE check-in, the record is insufficient to show she was not compliant with her ATD release

conditions. (Dkt. No. 15 at 8.) Petitioner argues she has complied with her conditions of supervision, including by reporting for regular check-ins with ICE, and maintaining a stable life with her family, including caring for a disabled child. (Dkt. No. 1.)

The Court concludes that there is a high risk that the lack of pre-deprivation process—that is, notice of any alleged release violations and a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

**3. Government Interest**

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz v. Lyons*, 25-cv-02879, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine…" *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is

minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process and that she should be released forthwith.

Finally, the Court turns to the question of exactly what process is due before the Government may re-detain Petitioner. It is well-established that the Due Process Clause usually "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Petitioner specifies the "kind of" hearing she believes is warranted before she may be re-detained: "a meaningful, individualized custody determination before a neutral decisionmaker where liberty interests are at stake. Such a determination must assess whether continued detention is actually necessary to mitigate flight risk or danger to the community." (Dkt. No. 1 at 32 ¶53.) *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that due process requires the government to justify prolonged immigration detention of certain noncitizens by "clear and convincing evidence" that an alien is a flight risk or a danger to the community). Here, the Petitioner was re-detained on January 9, 2026, when she reported as instructed for a supervision check-in as per her reporting requirements—the same day the government provided Form I-213 indicating there were "numerous violations" of her release conditions. (Dkt. No. 1 at 2; Dkt. No. 15 at 8.) Providing a document on the same day of detention is insufficient pre-deprivation notice to provide a meaningful opportunity to respond. Ms. Aperyan did not receive adequate notice of this finding and had no opportunity to meaningfully respond prior to her detention. Moreover, Respondents did not address the appropriate procedures for a re-detention. Because Respondents do not provide any reason to reject Petitioner's position, and it is consistent with *Singh*, Petitioner's requested relief is appropriate.

Accordingly, the Court hereby orders Petitioner released from detention forthwith and the Respondents are hereby prevented from re-detaining the Petitioner. If the Respondents are to re-detain her, Petitioner must be provided adequate pre-deprivation notice and a hearing at which the Government must justify the need to confine her.

**C. Petitioner's Remaining Claims**

Because the Court concludes that Petitioner is entitled to release on due process grounds, it declines to address her alternative arguments including whether her detention violates § 1126 and *Bautista*, and the APA. The Court does conclude—as it is undisputed that Petitioner applied for admission through the border with Mexico as an asylum-seeking noncitizen who was not in possession of a valid entry document and is charged with INA §212(a)(7)(A)(i) (codified as 8 U.S.C. § 1182(a)(7)(A)(i)), and detained under 8 U.S.C. section 1225(b)—she is not entitled to a bond hearing under § 1225(b).

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release along with her personal belongings, subject to appropriate conditions of supervision, and preventing her re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to confine her; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least 20 days of notice prior to Petitioner being

removed from this jurisdiction.

IT IS SO ORDERED.

DATED: March 27, 2026

*/s/ Anna Y. Park*

ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT K

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIACHESLAV SURGUCHEV,<br>Petitioner,<br>v.<br>WARDEN ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | No. 5:26-cv-4905-DSR<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE** |

## 1. INTRODUCTION AND PROCEDURAL BACKGROUND

Petitioner Viacheslav Surguchev is a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody since August 7, 2026. See Pet. (Doc. No. 1) at ¶ 14. On August 26, 2026, he filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his ongoing detention as violative of, inter alia, his right to due process. See Doc. No. 1. The Petition names as Respondents the Warden of Adelanto ICE Processing Center where Petitioner is detained; the Field Office Director of ICE's Los Angeles Field Office; the Acting Director of ICE; the Secretary of the Department of Homeland Security ("DHS"); and the Attorney General of the United States, each in his or her official capacity (collectively "Respondents"). Id. at ¶¶ 2-4.

Concurrently with filing this case, Petitioner also voluntarily consented under 28 U.S.C. § 636 to have a Magistrate Judge conduct all further proceedings in this case, including trial and the entry of judgment. See Doc. No. 5. The case became

Dockets.Justia.com

fully consented three days later pursuant to the United States Attorney's Office's General Consent to Disposition by Magistrate Judge in Immigration Cases. See General Order 26-05 at Ex. "A" (Doc. No. 7); see also Doc. No. 8.

On August 26, 2026, the Court issued the Notice of General Order 26-05 and Briefing Schedule. See Doc. No. 7. Therein, the Court "direct[ed] Respondents to show cause why the writ of habeas corpus should not be granted," and set an expedited briefing schedule on the Petition. Id. at 1-2. Pursuant to that expedited briefing schedule, Respondents' Answer was due on September 2, 2026. Id. at 2.

Respondents did not file an Answer by September 2, 2026, however. On September 8, 2026, the Court entered an Order to Show Cause re Failure to Answer Petition and Show Cause Why the Writ of Habeas Corpus Should Not Be Granted. See Doc. No. 9. Therein, the Court ordered Respondents to show cause no later than 5:00 p.m. on September 9th why they had failed to comply with the Court's Order requiring them to answer the Petition. Id. That Order to Show Cause further expressly warned Respondents that failure to respond "MAY BE TREATED AS A CONCESSION THAT PETITIONER IS ENTITLED TO THE RELIEF SOUGHT, OR AT LEAST THAT THE FACTUAL ALLEGATIONS IN THE PETITION ARE TRUE." Id. (capitalization in original). Despite this additional opportunity to answer the Petition, and express warning of the consequences for failure to do so, Respondents still did not file an Answer, or otherwise respond to the OSC.

The Court has read and considered the papers filed by Petitioner because those are the only papers filed in this case. The Court deems Respondents' lack of response – to the Petition, to the OSC contained in the Notice of General Order 26-05, and to the September 8, 2026, Order to Show Cause – as consent to granting the relief requested. See Local Rule 7-12. For that reason alone, and independently based on the allegations of the verified Petition for the reasons discussed below, the Court GRANTS the Petition and issues a Writ of Habeas Corpus ordering Petitioner's immediate release from immigration custody.

**2. FACTUAL BACKGROUND**

The Court sets forth a summary of the relevant factual background based on the facts alleged in the verified Petition. Respondents had the opportunity to dispute those facts, but they failed to file any response, let alone specifically dispute Petitioner's verified allegations. Accordingly, the facts alleged in the Petition are undisputed and have been conceded by Respondents. See Local Rule 7-12.

Petitioner is a native and citizen of Russia. See Pet. at ¶ 1. He first entered the United States near Otay Mesa, California, on or about April 16, 2022, without admission or parole. Id. at ¶ 8. DHS served him a Notice to Appear charging him under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). Id. On April 21, 2022, immigration officials released Petitioner on an Order of Release on Recognizance ("ROR") under INA § 236. Id. at ¶ 9.

During the next four-plus years that Petitioner lived freely in the United States, he complied with all requirements of his release and applied for asylum. Id. at ¶¶ 10, 11.[1] Additionally, in 2023 he began volunteering with "European Delights" to "provide food, transportation, logistics, and practical assistance to refugees, immigrants, and families in need." Id. at ¶ 19. His available record identifies no criminal history, conviction, violent conduct, or release-condition violation. Id. at ¶ 10.

On August 7, 2026, Petitioner was arrested by ICE officials while attending his scheduled ICE check-in. Id. at ¶ 14. He was arrested without notice or an opportunity to contest his detention. Id. Petitioner remains detained at the

---

[1] At some point after his release, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). See Pet. at ¶ 11. On June 17, 2026, an Immigration Judge denied such relief and entered a removal order. Id. That decision is presently on appeal to the Board of Immigration Appeals. Id. at ¶¶ 12-13. As such, the Immigration Judge's removal order is not administratively final. Id. at 2:12-14.

Adelanto ICE detention facility. Id. at ¶ 15. He has not received any hearing after being detained. Id. On August 25, 2026, Petitioner's counsel filed an emergency bond-redetermination request with the Adelanto Immigration Court and that request remains pending. Id. at ¶ 16.

In this Court, Petitioner now challenges his detention as unlawful in violation of the Due Process Clause of the Fifth Amendment and seeks an order compelling his immediate release. Id. at 10, prayer ¶ B. He also requests an injunction against "any future re-detention based on the same record without advance notice and a neutral pre-deprivation hearing, except in a genuine emergency followed by prompt review." Id at prayer ¶ F.

**3. LEGAL STANDARD**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'" Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024). Petitioner makes such reviewable claims here.

Title 28 U.S.C. § 2243 provides that a Court "entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." Here, via General Order 26-05, the Court directed Respondents to show cause why the writ should not be granted. See Doc. No. 7. Pursuant to Section 2243, Respondents were required in their Answer to certify "the true cause of the detention." 28 U.S.C. § 2243.

**4. DISCUSSION**

**A. Petitioner's Re-Detention Violates Due Process**

Petitioner argues that his August 7, 2026, re-detention and resulting ongoing immigration custody violates his right to procedural due process. See Pet. at ¶¶ 25-29. Respondents have failed to respond to the Petition. Such failure can be deemed consent to granting the relief requested. See Local Rule 7-12; Doc. No. 9. Not only is the writ proper here based on Respondents' failure to respond to the Petition (and the General Order, and this Court's Order to Show Cause), but habeas relief is also independently appropriate on the undisputed facts established in the verified Petition.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const. amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Id. at 990 (quoting Singh, 638 F.3d at 1203).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Brewster v. Bd. of Ed., 149 F.3d 971, 982 (9th Cir.1998). The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). If such a constitutionally protected interest exists, the second step applies a three-step balancing test described in Mathews v. Eldridge to assess what procedural safeguards are required. Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976). Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

**i. Petitioner Has a Constitutionally Protected Liberty Interest in His 2022 Release on Recognizance from Immigration Detention**

It is uncontroverted that Petitioner initially entered the United States near Otay Mesa, California in April 2022, was detained, and then released into the United States on an ROR. See Pet. at ¶¶ 8-9.[2] It is also undisputed that since he was released, Petitioner "complied with his release requirements for more than four years." Id. at ¶ 10.

Once Petitioner was released from immigration custody on an ROR, he acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the

[2] The fact that Petitioner was released from custody necessarily means that he demonstrated to the satisfaction of immigration officials that his release would not pose a danger to property or persons and that he was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, No. 1:25-cv-1226-KES-SKO, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F. Supp. 3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Deprivation of that protected interest required due process of law. The Court now turns to whether Respondents afforded Petitioner such due process.

**ii. The Mathews Balancing Test**

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Mathews, courts balance the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). Here, the balance favors Petitioner.

**a. Private Interest**

Petitioner's private interest here is substantial. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). "Freedom from

imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects." Id. at 690. Petitioner has a considerable liberty interest in maintaining his life out of custody via an ROR. In the multiple years between the time immigration officials released Petitioner on an ROR in 2022 and when they re-detained him at his ICE check-in appointment on August 7, 2026, Petitioner lived freely in the United States, during which time he applied for asylum, volunteered in the community, reported regularly to immigration authorities, and generally formed an expectation that he would not be subject to detention. See Pet. at ¶¶ 9-11. In consideration of the guiding principles and relevant authority, the Court finds that Petitioner's interest in remaining at liberty is substantial.

**b. Risk of Erroneous Deprivation**

Regarding the second Mathews factor, the risk of erroneous deprivation here is significant because Petitioner has not been afforded any opportunity to contest the revocation of his ROR. Id. at ¶¶ 14-15. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690. "Under federal regulation, DHS's decisions to release [noncitizens] on own recognizance necessarily involved a determination that each Petitioner was not a danger to the community nor a flight risk." Valencia Zapata, 801 F. Supp. 3d at 934 (citing 8 C.F.R. § 1236.1(c)(8)); see also J.A.E.M., 812 F. Supp. 3d at 1064 (release on own recognizance reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk) (quoting Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017)).

The question of whether there are any changed circumstances which allow Respondents to revoke the ROR and detain Petitioner is the entire point of requiring notice and an opportunity to be heard before Petitioner was deprived of his substantial liberty interest in his ROR and subjected to several weeks of

detention. A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard. Without written notice, and a meaningful, individualized hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." Fernandez v. Semaia, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 at *5 (C.D. Cal. Jan. 13, 2026). As one court has reasoned:

> ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard. [Citations omitted]. Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error. Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]" [Citation omitted]. A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for re-detention.

Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026). Thus, the second Mathews factor similarly favors Petitioner in this case.

**c. Government Interest**

Regarding the third Mathews factor, Respondents do not assert any countervailing interest (because they did not file a response to the Petition). Nevertheless, "[o]f course, the government and the public have a significant interest in 'enforcement of the United States's immigration laws,' [record citation

omitted], but that includes an interest in 'upholding procedural protections against unlawful detention.'" Nguyen v. Noem, 817 F. Supp. 3d 889, 900 (C.D. Cal. 2025) (second internal quote from Pinchi, 792 F.Supp.3d at 1037). Thus, the governmental interest in this prong of the Mathews analysis is not an interest merely in being able to revoke a non-citizen's ROR, but rather the interest in summarily revoking that status without any notice or opportunity to be heard. Courts have routinely recognized that such interest is "low." See, e.g., Gourav v. Janecka, No. EDCV 26-1253 MWF (DSR), 2026 WL 966568, at *3 (C.D. Cal. Apr. 7, 2026); Fernandez Lopez v. Wofford, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025); see also Cornejo v. Andrews, No. 1:25-CV-02062 JLT HBK, 2026 WL 237748, at *10 (E.D. Cal. Jan. 29, 2026) (the government interests in protecting the public from harm and preventing the noncitizen's flight "are adequately protected by having a neutral adjudicator evaluate whether a noncitizen presents these risks."); Telenchana v. Hermosillo, No. 2:26-cv-00363-GJL, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026) ("[T]he governments interest in [petitioner's] re-detention without adequate process is minimal or non-existent."); Chel v. Larose, No. 26CV1114-LL-BLM, 2026 WL 926902, at *3 (S.D. Cal. Apr. 6, 2026) ("[T]he government's interest in detaining Petitioner without notice, reasoning, and a hearing is low."). Thus, the third Mathews factor also favors Petitioner.

Therefore, the Mathews balance tips decidedly in favor of Petitioner on this record. The Court thus concludes that Petitioner's re-detention on August 7, 2026, occasioned by the de facto revocation of his ROR without notice or a pre-deprivation hearing, violated Petitioner's procedural due process rights.[3] See, e.g.,

---

[3] Because the Court concludes that Petitioner is entitled to release on procedural due process grounds, it is unnecessary to reach his alternative argument on statutory grounds. See generally Pet. at ¶¶ 30-32.

Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

**B. Immediate Release is the Appropriate Remedy**

Given this violation of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, No. 5:25-cv-2694-KK-ADSx, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's prior release on recognizance before his current re-detention. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Restoring Petitioner to the status quo also means release under the same conditions that were in place before the unconstitutional deprivation of his release. For the same reason that Respondents may not revoke Petitioner's ROR without affording him due process, they also may not change the conditions of that release – including by adding new conditions such as electronic monitoring or other alternatives to detention – without affording Petitioner due process. Return to the status quo similarly means return to Petitioner any personal property and documents seized from him at the time of his detention.

Finally, Petitioner requests in the Petition that the Court "[e]njoin any future re-detention based on the same record without advance notice and a neutral pre-deprivation hearing, except in a genuine emergency followed by prompt review." Pet. at 10, prayer ¶ F. Though given the opportunity to address that issue in their response, Respondents did not file a response to the Petition. The Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See Perez Bueno v. Janecka, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026) (ordering that the petitioner be released from immigration detention and that he not be re-detained without a pre-deprivation hearing); Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)). Habeas relief is not limited to "discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted." Carafas v. LaVallee, 391 U.S. 234, 239 (1968). Title 28 U.S.C. § 2243 expressly provides that "[t]he court shall . . . dispose of the matter as law and justice require."

A permanent injunction may be entered, at the discretion of the District Court, where a petitioner shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds Petitioner has made such a showing here. First, Petitioner has suffered an irreparable injury by being re-detained without due process of law, and would again if Respondents repeat such conduct. There is no indication that Respondents' well-publicized efforts to detain non-citizens no longer pose a threat to Petitioner of a repeat of the same deficient re-detention as occurred in August. Second, legal remedies such as damages would be inadequate to cure the unconstitutional loss of his liberty while he is in detention awaiting court action on another habeas petition again challenging the deprivation of his due process rights. And finally, the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they again seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and sue to win his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing. Thus, a permanent injunction prohibiting Respondents from repeating the same unconstitutional re-detention of Petitioner that necessitated this habeas case is appropriate.

**5. CONCLUSION**

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241 compelling his immediate release.

IT IS THEREFORE ORDERED that:

1. The Petition for Writ of Habeas Corpus is GRANTED.

2. Respondents shall immediately release Petitioner **VIACHESLAV SURGUCHEV (A-240-325-840)** from custody, reinstate his ROR under the same conditions that were in place before his re-detention on August 7, 2026, and return to him any personal property and documents seized from him at the time of his detention.
3. Respondents shall also provide Petitioner with a copy of this Order at or near the time of release.
4. Within two days of the date of this Order, Respondents shall file with the Court a status report confirming Petitioner's release and return of any personal property and documents.
5. Respondents are enjoined from re-detaining Petitioner without first providing him with notice and an opportunity to be heard on the reasons for the proposed revocation of his ROR.
6. The Court will issue Judgment consistent with this Order.

IT IS SO ORDERED.

DATED: September 10, 2026 ______________________________

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I am over the age of eighteen and not a party to this action. My business address is 440 Western Ave. Suite 205 Glendale, CA 91201.

On October 7, 2026, I served the foregoing **PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** on the following by [CM/ECF electronic filing]:

U.S. Attorney's Office Central District of California
312 N. Spring Street
Los Angeles, CA 90012

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Facility Director Adelanto East ICE Processing Center
10400 Rancho Road
Adelanto, CA 92301

Secretary, U.S. Department of Homeland Security
2707 Martin Luther King Jr. Ave SE
Washington, DC 20528

Acting Director, U.S. Immigration and Customs Enforcement
500 12th Street SW
Washington, DC 20536

Field Office Director
ICE Enforcement and Removal Operations – Los Angeles
300 N. Los Angeles Street
Los Angeles, CA 90012

Warden, Adelanto East ICE Processing Center
10400 Rancho Road
Adelanto, CA 92301

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 7, 2026 at Glendale, CA.

/s/ *Sarah Hacobian*
Sarah Hacobian